[Civ. No. 6768. Third Dist. May 18, 1943.]

WILLIAM J. SHALZ, Appellant, v. UNION SCHOOL DISTRICT et al., Respondents.

J. Oscar Goldstein and Burton J. Goldstein for Appellant.

Irving Shore and Laurence W. Carr for Respondents.

PEEK, J.—The plaintiff was a building contractor duly licensed by the State of California, and doing business under the fictitious name of Shalz Construction Company. The defendants were and are a school district and the members of its board of trustees.

On December 9, 1939, plaintiff and defendant district entered into a contract whereby plaintiff agreed to recon-

struct for defendant a public school building approximately nine miles from the city of Redding, at a place more commonly known as Boomtown.

The contract, among other things, provided that the work would be done in accordance with plans and specifications provided by the Department of Education of the State of California, and the contractor agreed to conform to a certain resolution previously adopted by the school district with reference to minimum wages, hours of work, etc. The provisions contained in the resolution were in accordance with sections 1770, 1772, 1773 and 1774 of the Labor Code of California; the pertinent portions of these sections read as follows:

1770. "The body awarding the contract . . . shall determine the general prevailing rate of per diem wages and its decision . . . shall be final."

1772. "Workmen employed by contractors or sub-contractors in the execution of any contract for public work are deemed to be employed upon public work.

1773. "The body awarding any contract for public work, or otherwise undertaking any public work, shall ascertain the general prevailing rate of per diem wages in the locality in which the public work is to be performed for each craft or type of workmen needed to execute the contract, and shall specify in the call for bids for the contract, and in the contract itself, what the general prevailing rate of per diem wages and the general prevailing rate for legal holiday and overtime work in the locality is for each craft or type of workman needed to execute the contract.

1774. "The contractor to whom the contract is awarded, and any subcontractor under him, shall pay not less than the specified prevailing rates of wages to all workmen employed in the execution of the contract."

Prior to the completion of the building the State Labor Commissioner ordered a hearing in the city of Chico to determine whether or not penalties should be assessed against plaintiff for certain alleged infractions of the Labor Code, by virtue of a charge by plaintiff of $1.60 per day for lodging facilities in the building owned by the district, and transportation furnished to his employees, which sum was deducted from their wages. Section 1775 of said code under which the penalties may be assessed, reads in part as follows:

"The contractor shall, as a penalty to the State or political subdivision on whose behalf the contract is made or awarded, forfeit ten dollars [$10] for each calendar day, or portion thereof, for each workman paid less than the stipulated prevailing rates for any public work done under the contract by him or by any subcontractor under him. . . ."

At the conclusion of the hearing a finding was made that plaintiff had violated the terms of the code and the contract in 288 instances, and a penalty was assessed against him in the sum of $2,880, being $10 for each separate violation. Thereupon the commission directed the school district and its trustees to withhold said sum from the final payment due plaintiff under his contract, and such sum was so withheld.

Plaintiff then instituted an action in the Superior Court of Shasta County to recover from the district the amount so held by it. The only issue raised by the pleadings is the legality of the charge of $1.60 per day, plaintiff contending that such deduction was a proper charge for the lodging and transportation furnished, and that he had paid his workers in accordance with the schedule adopted by the trustees of the district. The Labor Commissioner contends that the employees received less than the prevailing wages because of the deductions previously mentioned, that such deductions were exorbitant and therefore a subterfuge to escape the provisions of the code. To substantiate his contention the commissioner introduced evidence tending to show that housekeeping cabins could have been rented a short distance from the school for $5.00 per week. At the conclusion of the trial the court found that,

"The plaintiff's expenditures for the crude accommodations furnished the men could have been fully compensated for by a deduction of not more than ten or fifteen cents per man per day, and the plaintiff was unable to state the basis for his charge of $1.60 per day. The men could have secured much better accommodations in the neighborhood for less than half the sums deducted."

And that,

"The housing plan devised by the plaintiff was a subterfuge designed to reduce the prescribed wage scale; . . ."

From the adverse judgment of the trial court and the granting of the motion for a new trial on the sole ground of the amount of the penalties, plaintiff appeals, raising a

further contention that statutes imposing penalties must be strictly construed with the evidence clear and convincing that the statute has been violated, and that the deductions made by respondent were neither legitimate nor authorized by section 224 of the Labor Code, which provides:

"The provisions of sections 221, 222 and 223 shall in no way make it unlawful for any employer to withhold or divert any portion of an employee's wages when the employer is required or empowered so to do by State or Federal law or when *a deduction is expressly authorized in writing by the employee to cover insurance premiums, hospital or medical dues, or other deductions not amounting to a rebate or deduction from the standard wage* arrived at by collective bargaining or pursuant to wage agreement or statute." (Italics ours.)

Plaintiff asserts that the deductions made by him were authorized "by a valid and legal agreement" and denies "that the purpose and intent of said deductions was to evade the provisions of the . . . construction agreement or any provisions of the labor code."

The evidence shows that the contractor maintained his headquarters at Chico, that for some time prior to the execution of the contract involved he had intermittently employed several carpenters in the city of Chico, and that these men were usually paid the union scale prevailing in that city, which scale was from one to two dollars less than the scale prevailing at Redding and the scale fixed by the trustees of the school district. Plaintiff brought these men to Redding from Chico. At or about the time of the execution of the contract, seven of the eight men employed by plaintiff signed the following statement:

"We the undersigned employees of Wm. J. Shalz agree to pay the sum of $1.60 per day to Wm. J. Shalz for every day for the use of camping in the school building now under construction by Wm. J. Shalz, and each of us further agree, and direct him to deduct this sum from our wages. It is further understood and agreed by each of us and by Wm. J. Shalz that in the event the sum so charged and deducted from our wages, does not equal the Union Wages in the school contract said Wm. J. Shalz agrees to pay such additional wages, if any, to equal the Union wages upon completion and acceptance of the school building."

Several of the workmen testified that the arrangement was entirely voluntary, that they were satisfied with it, that on days when they lost time because of rain no deductions were made, but that on work days the sum of $1.60 was deducted from the regular wage. Although a Mr. Alexander, one of the employees, denied that execution of the agreement was a condition to getting a job, when asked on cross-examination: "When you signed this agreement did you have in mind the thought that perhaps you would not be employed by Mr. Shalz if you refused to sign the agreement?" he replied: "Well, I don't know about that. You can't read between the lines."

The entire facilities which were furnished the men and which plaintiff contends justified the charge of $1.60 per day per man appear in the record as follows: As a part of the construction work three sides of the building were removed. To enclose the exposed sides plaintiff furnished canvas and lumber, and the men did the work. They slept in whichever of the three rooms in the building they desired. An electric grill was furnished by one of the employees who also did the necessary wiring to hook it on to the main current,—four of the men ate elsewhere and therefore did not use the grill—the cost of its operation was paid by plaintiff. For heating purposes plaintiff furnished a wood stove and gave permission to use the waste lumber on the job for firewood, additional wood, if needed, could be secured from the surrounding hills. An undetermined amount of gasoline was furnished by plaintiff on several occasions, but at such times he usually rode with them. It was stipulated that water and toilet facilities would have had to be installed regardless of the men's use of the building. The employees also furnished all of their bedding and equipment, which fact was not controverted.

Plaintiff was asked, by both court and counsel, to state the basis for his charge of $1.60 per day but no satisfactory answer to these questions was given. His sole explanation was that he had a right to charge what he pleased.

The Labor Commissioner does not contend that an employer cannot lawfully contract with his employees to furnish them with services such as were here furnished. However, he does contend that the contract in the present case was a mere subterfuge calculated to reduce the prescribed wage scale, and that therefore it came within the

provisions of section 219 of the Labor Code, that "no provision of this article can in any way be contravened or set aside by a private agreement, whether written, oral, or implied." Also section 223 of the Labor Code, which reads:

"Where any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract."

The fact that some of the men testified that they voluntarily signed the agreement and were satisfied with the arrangement is not a controlling factor. They could not sanction the evasion of the law if that was either the intent or the effect of the contract.

The evidence presented to the trial court amply justified the finding that the charges made were exorbitant and entirely out of proportion to the services rendered and were used as a device to reduce the wage scale.

The constitutionality of requiring payment of the prevailing wages on public works and impositions of penalties for violations thereof has been sustained (*Metropolitan Water District* v. *Whitsett*, 215 Cal. 400 [10 P.2d 751]) and is not in question here. However, the validity of deductions coupled with an agreement to pay prevailing wages as is involved herein has not been adjudicated previously, and is a question of the first instance in this state.

In support of his contention that such deductions are valid, plaintiff cites the case of *Schumann* v. *California Cotton Credit Corp.*, 105 Cal.App. 136, 137 [286 P. 1068], from which he quotes:

"Wage is compensation for services rendered, and this compensation may take the form of money paid or other value given, such as board, lodging or clothes."

We do not feel that this case is in point. The decision involves the construction of a contract to finance a cotton crop, and the reviewing court held that picking advances were not limited to the actual amount paid per pound for the cotton picked but included other expenses such as sacks used by the pickers, the wages of the weigher, and the rent of tents or other living quarters for the pickers.

Likewise, *Sublett* v. *Henry's Turk & Taylor Lunch*, 21 Cal.2d 273 [131 P.2d 369], also cited by plaintiff, is not determinative of the issue herein. In that case the trial court rendered judgment in favor of plaintiff for the amount

of wages he was compelled to "kickback" to the employer; the Supreme Court reversed the judgment because the finding of the trial court that the workman was a third party beneficiary of a written contract with the union, was not sustained by the evidence which failed to establish a contract in writing. The judgment was reversed with directions to allow amendments to the pleadings to conform to the proof if sufficient evidence were produced to show an oral contract existed between the union and the employer for the benefit of the plaintiff.

Plaintiff cites several cases as further authority in support of his first contention that "penalties are to be strictly construed," but the cases cited by plaintiff in substantiation of his position, although correct as far as they go, are not comparable to the situation presented in the present case.

The purpose and intent of the act is plain and its object should not be defeated by overnice construction. (20 Cal.Jur. 981.) It is not the punishment of the offender in the sense ordinarily applicable to the term, but rather the recovery of the penalty as a fixed sum by way of indemnity to the public by reason of the violation of the statute and to charge him with a pecuniary liability.

Here we are presented with a question concerning the power of the state to impose penalties for violation of its statutory functions, the prescription of which is entirely a legislative matter. It is the usual method imposed to compel the performance of duties or conduct required by the state in carrying out its varied sovereign functions. Thus a legislature may impose any reasonable penalty it sees fit for the violation of valid regulations. There is no inhibition upon the state to impose such penalties for disregard of its police power as will insure prompt obedience to the requirements of such regulations. (23 Am.Jur. 626.)

The present case arose out of a previous hearing before the State Labor Commissioner wherein the commissioner made certain findings imposing the penalties in question. This is not an action to invoke a penalty, it is an action whereby plaintiff seeks a return of the funds previously assessed as a penalty and withheld from plaintiff by the commissioner's order. Thus the burden of proof is upon the plaintiff to prove acts constituting a legal defense or excuse. This the trial court found the plaintiff did not do. We

agree with that finding. The record shows ample evidence to sustain the trial court in this regard.

In determining plaintiff's final contention we feel that we may fairly assume from the wording of section 224 of the Labor Code that it undoubtedly was the express intent of the Legislature to allow proper deductions of the kind involved in this appeal. In this regard we concur with the statement by plaintiff that "under the foregoing provision of the labor code the employees had a perfect right to enter into a written contract with the employer for a deduction," but we do not agree with the balance of his statement "of $1.60 per day from their wages" or "that the court in effect held that wages could not be paid in any other form except money." We do not so understand the findings and conclusions of the court. It merely held that such charges must bear some reasonable relation to the services furnished, and with such statement of the law we are entirely in accord.

It is strictly within the province of the Legislature to adopt measures to reduce the evils of the exploiting of wages. The widespread adoption of similar statutes by so many states evidences a general conviction that minimum wage requirements are definitely in the interest of the general public welfare. Even if the wisdom of the policy is regarded as debatable and its effects uncertain, still the Legislature is entitled to its own judgment. The courts are unauthorized to deal with the question of policy. This is the sole province of the Legislature. It is for the Legislature to determine the necessity of such enactment, and once having so determined it is elementary to add that every presumption is in favor of its validity.

As the late Mr. Justice Holmes said in the case of *Adkins* v. *Children's Hospital*, 261 U.S. 525 [43 S.Ct. 394, 67 L.Ed. 785], wherein the District of Columbia Minimum Wage Act was at issue: "This statute does not compel anybody to pay anything. It simply forbids employment at rates below those fixed as a minimum requirement." This general question also was considered by the United States Supreme Court in *Chicago, B. & Q. R. Co.* v. *McGuire*, 219 U.S. 549 [31 S.Ct. 259, 55 L.Ed. 328], in which the court said:

"Freedom of contract is a qualified and not an absolute right. There is no absolute freedom to do as one wills or to contract as one chooses. The guarantee of liberty does not withdraw from legislative supervision that wide department

of activity which consists of the making of contracts, or deny to government the power to provide restrictive safeguards. Liberty implies the absence of arbitrary restraint, not immunity from reasonable regulations and prohibitions imposed in the interests of the community.''

The judgment and order are affirmed.

Adams, P. J., and Thompson, J., concurred.