[L. A. No. 22775. In Bank. Aug. 14, 1953.]

HARRY M. LORENSON et al., Respondents, v. THE CITY OF LOS ANGELES, Appellant.

Ray L. Chesebro, City Attorney, Bourke Jones, Assistant City Attorney, George William Adams and Alan G. Campbell, Deputy City Attorneys, for Appellant.

Thomas D. Kelly, Daniels & Daniels, Burdette J. Daniels and Eugene M. Elson for Respondents.

SCHAUER, J.—Defendant city of Los Angeles appeals from a judgment rendered by the court sitting without a jury awarding to plaintiff[1] the payment of salary covering a period during which, pursuant to an order of the chief of police, he was temporarily relieved "from duty from his position as" captain in the police department of defendant city. The principal ground urged by the city as requiring a reversal is plaintiff's failure to file a claim for the salary within the time limited by certain provisions of the city charter. For the reasons hereinafter stated we have concluded that the judgment should be affirmed.

The evidence is without substantial conflict. On April 12, 1949, plaintiff was indicted by the Los Angeles County Grand Jury on a charge of conspiracy to violate certain sections of the Penal Code. On the following day the chief of police of defendant city, purporting to act under section 202[2] of the Los Angeles city charter (Stats. 1935, p. 2347), by a written order temporarily relieved plaintiff from duty, upon the charge

---

[1] In this opinion the term plaintiff will refer to plaintiff Harry M. Lorenson only, although his wife was joined as a coplaintiff in deference to the community property laws of California.

[2] Subdivision (2) of city charter section 202 authorizes the chief of police to "(a) Temporarily relieve from duty any officer or employee of the Police Department pending a hearing before and decision by the Board of Rights of any charge or charges pending against such officer or employee"; or "(b) Suspend such officer or employee for a total period not to exceed thirty (30) days with loss of pay and with or without reprimand, subject, however, to the right of such officer or employee to a hearing before a Board of Rights . . ."

Subdivision (3) of section 202 provides that within five days after any order of relief from duty is made under paragraph (a) of subdivision (2), the chief of police "must . . . file with the Board of Police Commissioners a copy of a verified written complaint upon which such order of relief from duty . . . is based . . . Such complaint . . . must contain a statement in clear and concise language of all the facts constituting the charge made. In the event that the Chief of Police fails to file the aforesaid statement and complaint within the five (5) day period heretofore prescribed, the aforesaid order of temporary relief from duty . . . shall thereupon become void and of no effect and shall be automatically revoked, and the accused officer . . . restored to duty with the department without loss of pay and without prejudice, the same as if no order of relief from duty . . . has been made."

(set forth in a formal complaint filed with the board of police commissioners and served upon plaintiff, as required for continued effectiveness of an order temporarily relieving an officer from duty) that plaintiff "was indicted by the Los Angeles County Grand Jury on a charge of conspiracy to violate [certain specified] Sections . . . of the Penal Code, such action causing embarrassment to the Department." Lieutenant McCauley, who was then advocate[3] of the police department (hereinafter termed the department) for the presentation of charges under section 202 of the charter, had drafted the charge against plaintiff at the direction of Chief of Police Horrall. Lieutenant McCauley doubted the sufficiency of the proposed charge and therefore discussed the matter with two of the deputies in the city attorney's office. They advised him that they thought the charge to be legally insufficient. Lieutenant McCauley reported their opinions to Chief Horrall, who instructed him "to go ahead and write up the charges anyway . . . regardless of anyone's opinion." The reason given to Lieutenant McCauley for proceeding despite the questioned sufficiency of the charge was that "immediate action had to be taken. . . . We were all in agreement . . . That there weren't any other charges . . . they could file on Captain Lorenson." Lieutenant McCauley did not at any time bring to plaintiff's attention the fact that he had been told the charge was insufficient as "Feeling that I was acting for the Chief of Police I felt that . . . it was a matter between myself and the Chief of Police."

Following filing of the charge against plaintiff a board of rights was chosen, under procedure set forth in section 202 of the charter, to hear and decide the matter. A hearing was first set for April 19, 1949, but it was continued from time to time in compliance with the policy of the department, as explained by Lieutenant McCauley, to continue such matters "until the criminal courts had arrived at a decision. . . . [T]here had been much publicity. . . . [I]f we went ahead with this trial, there wouldn't be much doubt but that Captain Lorenson

---

[3] It appears that advocate of the department is a position in the department's "Personnel Division" (later termed the "Bureau of Internal Affairs"), which, under supervision of a deputy chief of police, handled disciplinary matters. The advocate "is the chief investigating officer concerning disciplinary matters . . . He also draws charges in the case of Board of Rights hearings, prosecutes the defendant in the hearing, and . . . [performs] other related tasks." McCauley, as advocate, had "charge of the case so far as the Police Department was concerned" when the charge against plaintiff "actually came to trial before the Board of Rights."

would be exonerated, and . . . we would again receive publicity to the effect that the Department had whitewashed or cleared a man who had still pending a trial in the criminal courts." Plaintiff, to whom McCauley had suggested that "we had better" continue the board hearing while the criminal proceedings were pending, did not object to the continuances.

On "about March 14," 1950, the indictment against plaintiff was dismissed by the court on motion of plaintiff's "attorney, consented to by the District Attorney, on the ground there was not sufficient evidence to prosecute." Hearing before the board of rights was thereupon held on March 16, 1950. At that time Deputy Chief Parker, who had general supervision, under the then Chief of Police Worton, over disciplinary matters, stated to the board that the city attorney had ruled the charge against plaintiff was not legal and the department had been so advised, that plaintiff should not have been relieved from duty, and "that it was the Department's desire to withdraw the charges." The attorney who had represented plaintiff in the criminal proceedings and who was present at the March 16th board hearing thereupon moved to dismiss the charge against plaintiff "upon the ground that the charge as stated does not constitute legal grounds for action by this Board." The board thereupon made its findings and decision "that the charge brought by the Department against Captain Lorenson does not constitute a legal charge and that he should be restored to duty, with all rights to which he is entitled under the provisions of the Charter of the City of Los Angeles and all pertinent ordinances adopted pursuant thereto." Accordingly the chief of police on the same day (March 16, 1950)— *but not until then*—restored plaintiff to duty as a captain.

The first inkling given plaintiff that following reinstatement his salary would not be paid for the full period he was relieved from duty "was at the final meeting of the Board of Rights" on March 16, 1950, when Deputy Chief Parker stated "that he was going to have to ask for an opinion before he could approve a salary, full pay or not . . ." Prior to that time plaintiff had at no time been informed that the charge against him was "considered insufficient by the Police Department or by the City Attorney's office," and plaintiff himself "considered them good, due to the fact that the Chief of Police had filed them." On "almost every occasion" plaintiff discussed the board hearings and continuances with McCauley, he was told that "if these things were thrown out in court and

cleared up, that I would be given an early hearing immediately and put back to work. . . . About December . . . I mentioned to him that it was a long time between paydays. He said, 'Yes, but when you get one it's going to be a good one.' . . . I said, 'I am not going to stand for a loss of salary by waiver or other means.' I told him that I had no part in any conspiracy and that I was not going to take any rap for it. He said, '. . . Don't worry about it. You will be put back to work.'" Plaintiff further testified that if he had been informed the city attorney considered the charge to be not sufficient he would have asked for an immediate board hearing and would have taken the matter to court if it had not been granted; that he had relied entirely on the statements made to him by McCauley, who had the immediate authority in the matter, and did not try to "go over his head" to speak with his superior officers in the department. Neither did plaintiff discuss the matter of sufficiency of the charge against him or of his back salary with the city attorney's office or with the board of rights prior to the March 16 hearing. Plaintiff further stated that he was familiar with and was relying upon subdivision (12) of section 202 of the city charter, which provides among other things that if the board of rights finds the accused " 'not guilty,' said board shall order his restoration to duty without loss of pay and without prejudice, and such order shall be self-executing and immediately effective," and had expected to receive his full pay in case he was exonerated.

Following his restoration to duty plaintiff was told the city attorney was working on the matter of his salary "and that it appeared favorable. Then I was advised by Lieutenant McCauley in the first part of April that I had better . . . file a claim before the City Clerk for back salary . . . immediately." On April 18, 1950, plaintiff filed a claim for all of the salary that had accrued between April 13, 1949, and March 16, 1950, in the total sum of $5,652.74. On recommendation of the city attorney that although plaintiff had been illegally deprived of his salary during the time he was relieved from duty, he was entitled to be paid only upon filing a claim under sections 363 and 376 of the city charter, the claim was allowed and paid in the sum of $2,541.77, which represented the amount plaintiff would have received as salary if he had been on duty continuously during the six months' period preceding the date he filed his claim. He thereupon brought this action

to recover the balance, and was given judgment for the full amount,[4] from which defendant city appeals.

Defendant contends that the act of its department head (the chief of police) in making the order relieving plaintiff from duty was illegal and void from the time it was made, that the charge filed against plaintiff was at all times legally insufficient and "would not support . . . [his] suspension or discharge upon a finding of guilt by a Board of Rights," that therefore plaintiff's right to his unpaid salary accrued semimonthly thereafter as the salary became due, and that the judgment must be reversed because of plaintiff's failure to file timely claims therefor under sections 363 and 376[5] of the city charter. Both in his complaint and at the trial plaintiff, although not suggesting or conceding the illegality or invalidity of the order temporarily relieving him from duty, or the insufficiency of the charge filed against him, relied upon the theory of estoppel of the city to invoke such above mentioned sections.

Upon the evidence summarized hereinabove the trial court found, among other things, that the department, knowing the charge against plaintiff was not legally sufficient, kept the knowledge from plaintiff, although plaintiff "was a faithful employee of over twenty years' service"; that plaintiff reasonably relied upon the act of the chief of police in relieving him from duty and upon the acts of the board of rights in continuing the hearings in accordance with department policy; and that agents of the department "induced and misled plaintiff . . . to believe that" plaintiff "would suffer no detriment or lose no salary by allowing said charge before said Board of Rights to be continued . . . until said criminal charges were disposed of." The court concluded, accordingly,

---

[4] Plaintiff had no outside earnings during the period here involved.

[5] Section 363: "Every claim for money or damages against the city, or any officer, board or department thereof . . . shall be filed with the City Clerk. . . . [T]he filing of any such claim . . . as above provided . . . shall constitute a compliance with the provisions of Section 376 as to the presentation of a claim prior to suit or action thereon."

Section 376: "No suit shall be brought on any claim for money or damages against the City of Los Angeles . . . until a demand for the same has been presented, as herein provided, and rejected in whole or in part. . . . Except in those cases where a shorter period of time is otherwise provided by law, all claims for damages against the city must be presented within six (6) months after the occurrence from which the damages arose, and all other claims or demands shall be presented within six (6) months after the last item of the account or claim accrued. . . ."

that the city must pay plaintiff the balance of his back salary. As pointed out in *Farrell* v. *County of Placer* (1944), 23 Cal.2d 624, 627-631 [145 P.2d 570, 153 A.L.R. 323], "there are many instances in which an equitable estoppel in fact will run against the government where justice and right require it." In that case, before the time for filing a claim for personal injuries had expired, agents of defendant county learned from plaintiff her version of the accident and by statements upon which she relied lulled her into a sense of security and persuaded her not to file a claim within the time limited by statute. It was held that filing of the claim was "nothing more than a procedural requirement as to the [governmental] agency, which, as to the claimant, may be excused by estoppel," and that such estoppel had been established. We are satisfied that the learned trial court correctly applied the same principle in the present case. Here plaintiff's superior officers, who were responsible for the conduct of the department and who, at least when acting lawfully, had the power to relieve subordinates from duty, relieved plaintiff from duty, filed a charge against him which they now say they were fully aware was legally insufficient, and secured continuances of the hearing for a period beyond the six months' claims provision which the city seeks to invoke. Plaintiff, as mentioned, as a captain of the police department, held an office subordinate to the chief of police; the order relieving plaintiff from duty was not vacated and he was not restored to duty until after the board of rights dismissed the charge on March 16, 1950. The filing of the formal charge, the issuing of the written order relieving plaintiff from duty, and the procurement by the department of the several continuances of the board of rights hearing, together with the other representations and acts on the part of the city, all combine to create a set of facts upon which plaintiff was reasonably entitled to rely until such time as the order relieving him from duty had been revoked or he had been otherwise restored to duty. Furthermore, the acts and conduct related support the finding of bad faith on the part of an official department of the city. Under all of those circumstances the city is properly held estopped to repudiate its own acts and declarations to its own monetary advantage and at the expense of the employe who was concededly illegally deprived of his salary. (See *Benner* v. *Industrial Acc. Com.* (1945), 26 Cal.2d 346, 349-350 [159 P.2d 24]; *Tyra* v. *Board of Police etc. Commrs.* (1948), 32 Cal.2d 666,

670-671 [197 P.2d 710]; *Schulstad* v. *City & County of San Francisco* (1946), 74 Cal.App.2d 105, 108-109 [168 P.2d 68]; *Mendibles* v. *City of San Diego* (1950), 100 Cal.App.2d 502, 506 [224 P.2d 42]; *Cruise* v. *City & County of San Francisco* (1951), 101 Cal.App.2d 558 [225 P.2d 988].) We do not, therefore, reach or decide the question of whether, as urged by the city, the charge against plaintiff and the order relieving him from duty were illegal or void.

Other charter provisions which the city also urges as requiring reversal of the judgment clearly do not apply. For instance, with respect to section 112½[6], *plaintiff* has not claimed that he was illegally, wrongfully or invalidly "suspended, laid off or discharged." Rather, he has at all times protested his belief, and his right to believe, that the order of the chief of police temporarily relieving him from duty, although unjust and unfounded in ultimate truth, was legal and valid until such time as the board of rights had disposed of the charge against him. It has been defendant city which has attempted to claim—and this only since dismissal of the charge by the board of rights—that the relief from duty was illegal and wholly void from the time it was ordered, a claim which, for the reasons already discussed hereinabove, the city is estopped to make. Since plaintiff has not made the claim which is essential to applicability of section 112½ we do not reach the question as to whether being temporarily "relieved from duty" under section 202 is encompassed within the expression "suspended, laid off or discharged" as the latter terms are used in section 112½.

■ With respect to subdivision (19)[7] of section 202 (the

---

[6]Section 112½: "Whenever it is claimed *by any person that he* has been unlawfully suspended, laid off or discharged, and that such lay-off, suspension or discharge is ineffective for any reason, any claim for compensation must be made and a demand for reinstatement must be presented in writing within ninety days following the date on which it is claimed that such person was first illegally, wrongfully or invalidly laid off, suspended or discharged. . . . Proof of filing the claim for compensation within the time and in the manner herein specified shall be a condition precedent to any recovery of wages or salary claimed to be due on account of said lay-off, suspension or discharge. Except as herein specified, such claims for compensation shall conform to the requirements of Sections 363, 369 and 376 of this charter." (Italics added.)

[7]Section 202, subd. (19): "Any person restored to duty or reinstated in his office or position after suspension or removal, as provided in and under any provision of this section, shall be entitled to receive full compensation from the city the same as if such suspension or removal had not been made, provided that such compensation shall not be for more than six (6) months' salary."

section under which the department purported to act in relieving plaintiff from duty and filing the charge against him), it is apparent from a reading of all of the provisions of that section (particularly of subdivisions (1), (2),[8] (3), (7), (12), (13) and (14) thereof) that the term "suspension" as used therein refers to a penalty which may be imposed upon the accused officer if he is found guilty by the board of rights or if he fails to defend himself against the charges made, whereas the term "relieved from duty" refers to the status of the accused pending hearing and determination by the board of the charges. Thus the limitation of recovery to six months' salary placed by subdivision (19) upon those who have been wrongfully subjected to "suspension or removal" *by way of punishment* would not limit the salary recoverable by plaintiff, who was only temporarily, and not in any sense by way of punishment, "relieved from duty" pending the board hearing. This view finds further support in the provision of subdivision (12) that in case the board finds the accused to be guilty, the maximum period for which the accused may be suspended "with total loss of pay" is six months.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., and Spence, J., concurred.

EDMONDS, J.—I concur in the affirmance of the judgment but not upon the grounds stated in the majority opinion.

Section 376 of the city charter requires as a condition precedent to suit the presentation of a demand within six months from the time a claim has accrued. Therefore, the decisive question presented in this case is: When did that time commence to run?

Throughout this proceeding Lorenson has maintained that his claim for compensation did not arise until the board of rights declined to order his restoration to duty without loss of pay. On the ground that the order relieving him from duty was void, the city asserts that a claim for salary arose at the end of each semimonthly period for which he was not paid. Although the court declines to decide which of the two positions is correct, the conclusion that Lorenson is entitled to recover on the basis of estoppel necessarily must be based upon the city's contention. In my opinion, the applicable provisions of the city charter may not be so construed.

---

[8]Subdivision (2) is quoted in part in footnote 2, hereinabove.

Paragraph 2(a) of section 202 of the charter authorizes the chief of police to relieve from duty temporarily any officer or employee "pending a hearing before and decision by the Board of any charge or charges pending against such officer or employee." In the event the chief takes no further steps, the order is revoked and the accused restored to duty without loss of pay and without prejudice. (Par. [3].) However, if the chief thereafter, within five days from the order relieving the accused from duty, files with the board of police commissioners a complaint and statement of charges, then the right to receive compensation for the period the accused is off duty is governed solely by the disposition of the charges against him in the hearing before the board of rights.

Paragraph (14) of section 202 provides that "[i]n any case of penal suspension or removal prescribed by the Board of Rights . . . the time of such suspension shall be computed from the first day such officer or employee was so suspended or relieved from duty pending hearing before and decision by the Board of Rights, and such removal shall relate back to and be effective as of the date of such relief from duty pending hearing before and decision by the Board of Rights." Paragraph (12) of the same section declares: "If the accused is found 'not guilty,' said board shall order his restoration to duty without loss of pay and without prejudice." According to the clear import of these sections, an accused may not claim "a right to receive compensation" for a period of relief from duty until the board has made a decision favorable to him.

In the present case, Lorenson's right to receive compensation for the period in question was not determined until March 16, 1950, when the board dismissed the charges against him. Since his claim was presented only one month later, it was timely filed.

To hold, as the majority imply, that a claim must be filed within six months from the date each salary payment otherwise would have been due, places a burden upon an accused not warranted by any provision of the charter. Under the present decision, to protect his right, an accused must file numerous claims in anticipation of the possibility that the board will acquit him but without an order for the payment of his salary during the time he was relieved from duty.

I would follow the plain provisions of the charter which give every policeman rights to which he is clearly entitled. The rule of estoppel is based upon facts from which different

inferences may be drawn. The right to the payment of salary for the time one has been relieved from duty and thereafter acquitted of the charges made against him, should not rest upon such an uncertain basis.