[Civ. No. 32044. Second Dist., Div. Five. June 19, 1969.]

MERCO CONSTRUCTION ENGINEERS, INC., Plaintiff and Appellant, v. LOS ANGELES UNIFIED SCHOOL DISTRICT OF LOS ANGELES COUNTY, Defendant and Respondent.

Grant & Popovich and Irvin Grant for Plaintiff and Appellant.

John D. Maharg, County Counsel, and Ron Apperson, Deputy County Counsel, for Defendant and Respondent.

Henry B. Ely as Amicus Curiae on behalf of Defendant and Respondent.

KAUS, P. J.—Plaintiff appeals from a judgment which followed an order sustaining defendant's general demurrer to plaintiff's amended complaint without leave to amend.

The gravamen of plaintiff's action is that the defendant Los Angeles Unified School District of Los Angeles County ("District") acted illegally in assessing a $77,000 penalty against certain sums due plaintiff for the construction of the Crenshaw High School.

The legal questions involved in this appeal are mainly: 1. the constitutionality of the "Subletting and Subcontracting Fair Practices Act" (Gov. Code, §§ 4100-4113, the "Act"); 2. the applicability of section 1670 of the Civil Code; and 3. the question whether under the facts alleged in the amended complaint the District is estopped to enforce the act.

## The Act

A brief outline of relevant parts of the Act will be helpful.[1]

The Act contains a legislative finding that bid shopping and bid peddling in connection with the construction of public improvements have various specified bad effects (§ 4101); it prescribes that, except as to insignificant portions of the improvement, a contractor must list all proposed subcontractors in his bid (§ 4104); it allows substitutions or deletions of subcontractors on certain conditions (§ 4107); and, in case of violation by the prime contractor, it gives the awarding authority various options to penalize the contractor, which it may exercise in its discretion: 1. cancellation of the contract; 2. assessment of a penalty in an amount no greater than 10 percent of the subcontract involved; or 3. both. Any penalty is to be deposited "in the fund out of which the prime contract is awarded" (§ 4110).

## The Complaint

Plaintiff's complaint sounds in declaratory relief. The following is a summary of its allegations.

Plaintiff, a licensed general contractor, submitted a bid for the construction of the school. In the preliminary compilation of its bid, plaintiff included as the cost of mechanical work the bid of J. A. Mitchell Co. ("Mitchell") in the sum of $947,500.

Six minutes before the deadline for submission of bids to defendant, and in accordance with a custom of last minute bidding, plaintiff received a telephone bid for mechanical work from A. Strauss Co. ("Strauss") in the sum of $770,000. Because of the discrepancy in the bids of Mitchell and Strauss, plaintiff telephoned Strauss to confirm its bid. Plaintiff was told that the Strauss bid did not include steam heating work, but that another subcontractor had submitted a bid for that work. During this conversation no mention was

---

[1]Unless otherwise designated, all code references are to the Government Code.

made of the fact that the Strauss bid did not include the automatic fire sprinkler system.

Plaintiff found a bid of $136,000 for the steam heating from another subcontractor. This bid plus the Strauss bid totaled $906,000, $41,500 less than the Mitchell bid. Plaintiff therefore reduced its total bid by that sum.

Later that day, after the bids had been opened, plaintiff discovered that the Strauss bid did not include the automatic fire sprinkler system and that the reasonable cost of furnishing and installing such a system was $88,500. Plaintiff then phoned Ida Del Pozzo, the senior administrative assistant in defendant's Planning Division. Miss Del Pozzo's duties included conferring with contractors on problems arising out of construction contracts and advising them on procedures to follow to resolve such problems and on defendant's established policies with respect to such contracts.

Plaintiff asked Miss Del Pozzo the proper procedure to follow "to be relieved of the error which had been made in listing A. Strauss Co. as a proposed subcontractor." She advised plaintiff that it should take no action to obtain relief until after the "award of the prime contract" as such a request would delay award of the contract, but that a request for relief after the award of the contract would be granted because defendant "had established a policy of permitting the prime contractor to substitute or delete a proposed subcontractor who had been inadvertently listed." Plaintiff relied on this advice and took no action to be relieved of its mistake until after the prime contract was awarded. One week after submission of its bid, plaintiff entered into a written contract to construct the school for the price of the submitted bid.

Thereafter plaintiff requested deletion[2] of Strauss from the proposed list of subcontractors. Defendant's staff found that the listing of Strauss was legally excusable error and recommended that plaintiff's request be granted as it would be in defendant's best interests to do so. Defendant, however,

---

[2] We do not know whether plaintiff, in its complaint, uses the word "deletion" in a technical sense, differentiating a mere "deletion" of a subcontractor and consequent doing of the work by the prime contractor, from "substitution" of one subcontractor for another. Both "deletions" and "substitutions" are prohibited by section 4107 of the Government Code (*Fred J. Early, Jr., Co.* v. *County Sanitation Dist.*, 214 Cal.App.2d 505 [29 Cal.Rptr. 633]), although the conditions for relief from the prohibitions against the two types of deviation from the original bid are not necessarily the same.

rejected the staff recommendation and denied plaintiff's request.

Plaintiff nonetheless failed to enter a contract with Strauss. The complaint does not allege just what plaintiff did about having Strauss' part of the work accomplished. It is stipulated, however, that plaintiff had it done by another subcontractor.

Defendant, exercising its discretion under section 4110 of the Government Code, assessed a penalty of $77,000 against plaintiff, a sum equal to 10 percent of the Strauss bid, to be deducted from the amount earned by plaintiff in performance of the prime contract. This action followed.

In order to avoid, if possible any consideration of the constitutional issues, we first consider plaintiff's other contentions.

### Civil Code, Section 1670

This issue is spurious. The penalty which defendant has assessed derives its validity not from the contract between the parties, but from the act. ▮ ". . . The Legislature, of course, has power to provide for administrative sanctions with respect to a licensee who violates a regulation deemed to be in the public interest. . . ." (*Allied Properties* v. *Department of Alcoholic Beverage Control*, 53 Cal.2d 141, 150 [346 P.2d 737]; see also *Fred J. Early, Jr., Co.* v. *County Sanitation Dist.*, 214 Cal.App.2d 505 [29 Cal.Rptr. 633]; *Shalz* v. *Union School Dist.*, 58 Cal.App.2d 599, 606 [137 P.2d 762].)

### Estoppel

At the very outset of the discussion it should be noted what this lawsuit is not about. We have here no question of plaintiff's power to rescind because of a clerical mistake. (*M. F. Kemper Constr. Co.* v. *City of Los Angeles*, 37 Cal.2d 696 [235 P.2d 7].) Had plaintiff refused to sign its contract with defendant, any differences of opinion concerning its right to do so would have reached the courts in an entirely different posture. Plaintiff claims nothing less than that, knowing of the mistake, it could nevertheless sign the prime contract without first being permitted to substitute or delete Strauss, that Miss Del Pozzo's representations gave it an absolute right to later relief and that, such relief being refused, it had the right to complete performance with a subcontractor other than Strauss without being subjected to the statutory penalty.

■ Estoppel may be invoked against a governmental agency only when the agency has the power to do that which it promised to do or which it led the opposing party reasonably and justifiably to believe it would do. Where, however, the procedure specified in a statute is the measure of the agency's power to act, estoppel cannot be applied to enlarge that power. (*County of San Diego* v. *California Water etc. Co.*, 30 Cal.2d 817, 825 [186 P.2d 124, 175 A.L.R. 747].)

Estoppel is most frequently invoked against government entities in situations where a tort claims statute has not been complied with for reasons factually sufficient to create an estoppel. The rationale was set forth in *Farrell* v. *County of Placer*, 23 Cal.2d 624, 630-631 [145 P.2d 570, 153 A.L.R. 323] : "Although it has been repeatedly held that compliance with the appropriate claim statute is mandatory and an essential requisite to plaintiff's cause of action, nevertheless the time element with respect to the filing of the claim is essentially procedural in nature [citations omitted] and is analogous to a statute of limitation. [Citations omitted.] It has been intimated by some authorities that the claim statute is the measure of the power of the governmental agency in paying the tort claims involved, and hence any deviation from that procedure cannot be dispensed with by waiver, estoppel, or otherwise. That conclusion, at least with respect to the time of filing the claim, is not supported by the statute or reason. The various reasons advanced for the adoption of the claim statute, that is, to afford the agency an opportunity to investigate the merits of the claim, and to arrive at a settlement, thus avoiding litigation, are not inconsistent with the view that *the statute is not the measure of the power. From the standpoint of the agency it has general power to pay claims arising from the liability imposed by the public liability act.* Hence the filing of the claim within ninety days, while mandatory upon the claimant and a condition precedent to his cause of action, is nothing more than a procedural requirement as to the agency, which, as to the claimant, may be excused by estoppel. There are cases where the procedure specified in the statute is manifestly the measure of the power. [Citation omitted.] There are instances where the procedural steps are not the measure of the power and estoppel may be invoked against a governmental agency from relying upon irregularities therein. [Citations omitted.] This court has held that compliance with the claim statute is not jurisdictional with respect to the

power of a court to give judgment against the governmental agency where no claim was filed. [Citation omitted.]'' (Italics added.) (In accord, *Bruce* v. *Jefferson Union High School Dist.*, 210 Cal.App.2d 632 [26 Cal.Rptr. 762]; *Orinda-County Fire Protection Dist.* v. *Frederickson & Watson Co.*, 174 Cal. App.2d 589 [344 P.2d 873]; *Dettamanti* v. *Lompoc Union School Dist.*, 143 Cal.App.2d 715 [300 P.2d 78].)

In *Rand* v. *Andreatta*, 60 Cal.2d 846, 849 [36 Cal.Rptr. 846, 389 P.2d 382], the issue was the failure to file any claim, rather than the filing of a late claim. The court held that since late or defective notice was the legal equivalent of no notice, the rule of *Farrell, supra,* applied.

Estoppel has also been invoked to relieve plaintiffs from the effect of statutes of limitations which would otherwise bar recovery of pensions or back wages. Again the rationale has been that such statutes are merely procedural in nature and not a measure of the agencies' power. (*Lorenson* v. *City of Los Angeles,* 41 Cal.2d 334 [260 P.2d 49]; *Tyra* v. *Board of Police etc. Comrs.,* 32 Cal.2d 666 [197 P.2d 710]; *Phillis* v. *City of Santa Barbara,* 229 Cal.App.2d 45 [40 Cal.Rptr. 27].)

By contrast, estoppel is not available to:

1. relieve a taxpayer of liability for taxes which the government led him to believe he did not owe (*United States Fid. & Guar. Co.* v. *State Board of Equalization,* 47 Cal.2d 384 [303 P.2d 1034]; *Goodwill Industries* v. *County of Los Angeles,* 117 Cal.App.2d 19 [254 P.2d 877]);

2. compel an agency to abandon or relocate a highway when a statute limits the agency's power to do so and the statute has not been complied with (*County of San Diego* v. *California Water etc. Co., supra,* 30 Cal.2d 817);

3. prevent revocation of licenses erroneously issued or retained in contravention of law (*Martin* v. *Alcoholic Beverage etc. Appeals Board,* 52 Cal.2d 287 [341 P.2d 296]; *Jacques, Inc.* v. *State Board of Equalization,* 155 Cal.App.2d 448 [318 P.2d 6]; *Joseph George Distributor* v. *Department of Alcoholic Beverage Control,* 149 Cal.App.2d 702 [308 P.2d 773]);

4. compel an agency to certify for employment one who is not qualified under civil service standards (*Patten* v. *California State Personnel Board,* 106 Cal.App.2d 168 [234 P.2d 987]) or reinstate an employee who refuses to abide by civil service regulations he was led to believe would not apply to

him (*Boren* v. *State Personnel Board,* 37 Cal.2d 634 [234 P.2d 981]).

In each of the above cases the statute involved was the measure of the agency's power to act and the defect was substantive, not merely procedural. ▮ ". . . [N]either the doctrine of estoppel nor any other equitable principle may be invoked against a governmental body where it would operate to defeat the effective operation of a policy adopted to protect the public. . . ." (*County of San Diego* v. *California Water etc. Co., supra,* 30 Cal.2d 817, 826.)

Our inquiry in the instant case, therefore, must be directed to the issue of whether the defendant had the power under the Act to grant plaintiff the relief it requested.

Before turning to this issue we would point out that the facts pleaded in support of estoppel are somewhat equivocal. Plaintiff never defines what it means by the term "award of the prime contract." If this refers merely to the announcement of the successful responsible low bidder, plaintiff has not stated a factual basis for estoppel since after such announcement plaintiff went ahead and entered a formal written contract without requesting relief from its mistake. We do not hinge our resolution of this issue on such narrow grounds, however, and will assume for purposes of this decision that plaintiff could prove that the term "award of the prime contract" was used by Miss Del Pozzo to include execution of the formal contract.

Another collateral problem must be discussed. As we mentioned earlier, the complaint is susceptible to the interpretation that what plaintiff requested of defendant was not permission to substitute another subcontractor for Strauss, but to "delete" Strauss, which may mean that plaintiff wanted to do the mechanical work with its own forces. Conceivably this affected the defendant's powers under the statute. Section 4107 reads as follows:

"No prime contractor whose bid is accepted shall:

" (a) Substitute any person as subcontractor in place of the subcontractor listed in the original bid, except that the awarding authority may consent to the substitution of another person as a subcontractor, when the subcontractor listed in the bid after having had a reasonable opportunity to do so fails or refuses to execute a written contract, when such written contract, based upon the general terms, conditions, plans and specifications for the project involved or the terms of such .

subcontractor's written bid, is presented to him by the prime contractor, or becomes insolvent or fails or refuses to perform a written contract for the work or fails or refuses to meet the bond requirements of the prime contractor as set forth in Section 4108. Prior to approval of any such substitution the awarding authority shall give notice in writing of at least three working days to the listed subcontractor of the prime contractor's request to substitute another subcontractor unless such listed subcontractor has himself advised the awarding authority in writing that he has knowledge of the prime contractor's request. Such notice may be served by registered mail to the last known address of such subcontractor.

"(b) Permit any such subcontract to be voluntarily assigned or transferred or allow it to be performed by anyone other than the original subcontractor listed in the original bid, without the consent of the awarding authority.

"(c) Other than in the performance of 'change orders' causing changes or deviations from the original contract, sublet or subcontract any portion of the work in excess of one-half of 1 percent of the prime contractor's total bids as to which his original bid did not designate a subcontractor."

It has been held that doing the work without subletting it, after listing a subcontractor in the bid, is a violation of subsection (b). (*Fred J. Early, Jr., Co.* v. *County Sanitation Dist., supra,* 214 Cal.App.2d 505.)[3] Substitutions clearly come under subsection (a). That subsection limits the power of the awarding authority to allow a substitution to certain enumerated contingencies; subsection (b) does not, on its face, condition the power to consent. Without deciding the point, it is, therefore, quite arguable that if all plaintiff requested was a deletion and the defendant's governing board was or should have been aware of the dealings between plaintiff and Miss Del Pozzo, it was indeed estopped to deny the request. It is, however, stipulated that after the denial plaintiff went ahead and "substituted." We know of no authority to the effect that the defendant's failure to permit what it should have allowed, in turn left the plaintiff free to do what the defendant could not have authorized.

---

[3] *Early* construed subsection (b) of the predecessor statute, the relevant language of which is identical.

Arguing that the defendant's power to permit a substitution was not circumscribed by subsection (a) of section 4107, plaintiff relies on *Klose* v. *Sequoia Union High School Dist.*, 118 Cal.App.2d 636 [258 P.2d 515]. In *Klose* the prime contractor had inadvertently listed the name of subcontractor A in its bid, intending to list subcontractor B. It had, however, included the bid price submitted by subcontractor B, as intended. There was, therefore, a simple clerical error as to the name of the subcontractor, but no variation between the price actually bid and the price the prime contractor intended to bid. The court held that the district had the power to permit the prime contractor to substitute the name of subcontractor B.

The facts before us are significantly different. While the pleadings talk about the inadvertent listing of a subcontractor, it is clear that the real problem was not the subcontractor's identity but the amount of his bid. ■ Where the crux of the dispute involves the subcontract price rather than merely the subcontractor's identity, the policy of the Act prohibiting bid shopping and bid peddling (§ 4101) is directly involved.

Furthermore, in 1963 the Legislature enacted amendments to the Act which ʳequire reexamination of the holding in *Klose*. The court in *Klose* found that former section 4104—the predecessor of section 4107—gave the awarding authority plenary power to consent to substitution of subcontractors. The introductory phrase to section 4104 had read: "No general contractor whose bid is accepted shall, without the consent of the awarding authority, either: . . . . " Section 4107, on the other hand, begins as follows: "No prime contractor whose bid is accepted shall: . . . ." Then follow the prohibitions. The only blanket power of the awarding authority to "consent" is contained in subsection (b) with which we are not concerned.[4]

The holding in *Klose* was also necessitated by the fact that he only specific authority to allow a substitution mentioned

––––––––––––––

It may be of some significance to note that the legislative finding of evils of bid shopping were not contained in the Act before the 1963 amendments. We also note that another holding of *Klose*, namely that the contractor listed in the prime contractor's bid does not thereby attain a contractual right to the subcontract, is at this very time under review the Supreme Court. (*Southern Cal. Acoustics Co.* v. *C. V. Holder, Inc.*, (Cal.App.) 70 Cal.Rptr. 809, hearing granted.) It is immaterial to our opinion whether the 1963 amendments were intended to change that aspect of *Klose*.

*A hearing was granted by the Supreme Court on September 25, 1968. The final opinion of that court is reported in 71 Cal.2d 719 [79 Cal.Rptr. 319, 456 P.2d 975].

in former section 4104 was contingent on the listed subcontractor's refusing to enter into a contract. This permitted—indeed forced—the court to make the point that there were several other situations, such as the subcontractor's neglect, refusal or inability to complete the job, going out of business or into bankruptcy, and death, where common sense demanded a power to permit a substitution. These matters are now covered by section 4107 subsection (a).

Section 4107 shows far more careful legislative draftsmanship than did its predecessor. ■ Subsection (a) allows a substitution on certain definite contingencies. Subsection (b) permits relief from its restrictions simply by consent of the awarding authority, while subsection (c) cannot be avoided at all, except in the performance of change orders. These nuances cannot be without significance. We therefore hold that *Klose* is inapplicable to this case.

■ Since defendant's powers to permit a substitution are limited to the instances enumerated in subsection (a) of section 4107, none of which apply here, Miss Del Pozzo's advice could not estop defendant.

### Constitutionality of the Act

Plaintiff assails the constitutionality of the Act on a broad front. We find it unnecessary to determine all of its numerous contentions, since we are able to dispose of the precise question before us—whether defendant's demurrer should have been sustained without leave to amend—on a relatively narrow ground.

■ One feature of the Act invalidates the assessment of a penalty against plaintiff. Section 4110 reads as follows: "A prime contractor violating any of the provisions of this chapter violates his contract and the awarding authority may exercise the option, in its own discretion, of (1) canceling his contract or (2) assessing the prime contractor a penalty in an amount not more than 10 percent of the amount of the subcontract involved, and this penalty shall be deposited in the fund out of which the prime contract is awarded, or (3) both canceling the contract and assessing the penalty."[5]

---

[5]The penalty provided for in section 4110 is not the only sanction which follows a violation of the Act. Section 4111 provides that such violation "constitutes grounds for disciplinary action by the Contractors State License Board, in addition to the penalties prescribed in Section 4110." Chapter 1380 of the statutes of 1945, which substantially amended the original Act, contained a typical severability clause. Nothing we say is intended to throw any doubt on the validity of section 4111.

In the case at bar the penalty assessed was the monetary maximum of $77,000. In addition, defendant could have cancelled the prime contract. On the other hand it could have assessed no penalty whatever. The proceeds of the penalty went to defendant. Having in mind the frequent squabbles between contractors and awarding authorities, such a power to be lenient or stern, assumes rather alarming proportions. That, however, is perhaps a matter of legislative judgment. The aspect of section 4110 which, we are certain, violates basic notions of due process is that all this can be done without notice or hearing. As far as the statute is concerned, all that defendant had to do was to send plaintiff a bill or, easier yet, credit itself with $77,000 in the final accounting.[6]

The constitutional requirement for a hearing was recently so exhaustively discussed in *Endler* v. *Schutzbank,* 68 Cal.2d 162, 169-173 [65 Cal.Rptr. 297, 436 P.2d 297] and *Sokol* v. *Public Utilities Com.,* 65 Cal.2d 247, 253-256 [53 Cal.Rptr. 673, 418 P.2d 265], that there is nothing for this court to add. It should be pointed out that we are not faced with the problem whether due process would demand a hearing if the statute provided for a mandatory penalty of a specific percentage, as did the predecessor statute to section 4110, former section 4106. We deal with a law which, on its face, gives the awarding authority a very wide discretion, but provides no opportunity to the party most affected, the contractor, to present any facts or arguments on which the exercise of that discretion might be predicated.

Indeed, if we correctly understand defendant's position at the time of the oral argument in this case, it does not really question plaintiff's right to a hearing on the penalty issue. Rather it contends that such a right may be implied from the Act and that plaintiff received a hearing.

Adverting first to the latter point, we note that defendant has filled the record both below and in this court, with certain portions of its own records, such as transcripts of various proceedings. Even if these records are properly the subject of judicial notice—as to which we express no opinion—there has been no compliance with section 453 of the Evidence Code and

---

[6]We say nothing about the Act's failure to prescribe any procedure for the ascertainment of the fact of a violation. The doctrine that no hearing is required to determine undisputed facts may be applicable to that particular problem. (*DeMille* v. *American Federation of Radio Artists,* 31 Cal.2d 139, 155 [187 P.2d 769, 175 A.L.R. 382]; cf. *Endler* v. *Schutzbank,* 68 Cal.2d 162, 181, fn. 14 [65 Cal.Rptr. 297, 436 P.2d 297].)

we decline to consider them. At most, however, on the point presently under discussion, these records show that defendant was heard, after a fashion, on the penalty issue. This is not enough. In *People* v. *Broad,* 216 Cal. 1, 7-8 [12 P.2d 941], the Supreme Court said: ''The rule is well settled that to constitute due process of law in regard to the taking of property the statute should give the parties interested some adequate remedy for the vindiction of their rights (12 Cor. Jur., Constitutional Law, sec. 997, p. 1220); and while it is a proper exercise of legislative power to provide for the destruction of property without notice when the public welfare demands summary action—instances of this kind being the power to destroy diseased meat or decayed fruit, to kill diseased cattle, or to destroy property kept in violation of law which is incapable of lawful use (12 Cor. Jur., Constitutional Law, sec. 999, p. 1224)—nevertheless, where the property involved is what is sometimes termed innocent property, threatening no danger to the public welfare, the owner must be afforded a fair opportunity to be heard *(Modern Loan Co.* v. *Police Court,* 12 Cal.App 582 [108 P. 56]); and it has accordingly been held that to constitute due process the statute itself must provide for notice of the time and place of hearing where the parties may present in a regular and orderly manner issues of law and fact *(Ieck* v. *Anderson,* 57 Cal. 251 [40 Am.Rep. 115]). The same rule was declared in *H. Moffat Co.* v. *Hecke,* 68 Cal.App. 35 [228 P. 546], where it was held that the essential validity of the law was to be tested not by what has been done under it, but by what may by its authority be done; and where a statute authorizes the taking of private property but makes no provision for hearing or notice, either actual or constructive, such defect is not supplied by the voluntary adoption by public officers of rules covering the situation. So in *Security Trust Co.* v. *Lexington,* 203 U.S. 323 [51 L.Ed. 204, 27 S.Ct. 87, 89], a case involving the validity of an assessment, it was held that if a statute makes no provision for notice in any form it is not material that as a matter of grace or favor notice may be given. *As the court stated, 'it is not what notice, uncalled for by the statute, the taxpayer may have received in a particular case that is material, but the question is whether any notice is provided by the statute.' Nor can extra official or casual notice, or a hearing granted as a matter of discretion, be deemed a substantial substitute for the due process that the Constitution requires (Stuart* v.

*Palmer,* 74 N.Y. 183 [30 Am.Rep. 289]; *Coe* v. *Armour Fertilizer Works,* 237 U.S. 413 [50 L.Ed. 1027, 35 S.Ct. 625]; *Louisville & Nashville R.R.* v. *Stockyards Co.,* 212 U.S. 132 [53 L.Ed. 441, 29 S.Ct. 246].) . . ." (Italics added.) (See also 2 Am. Jur.2d, Administrative Law, § 401.)

Again, defendant does not even seriously question the rule of *People* v. *Broad, supra.* Chiefly it relies on a series of cases in which the particular statute or ordinance involved did not expressly call for a hearing, but where it was held that such a right was implied by the use of certain words in the enactment.

Thus there is a whole series of cases, such as *Keenan* v. *San Francisco Unified School Dist.,* 34 Cal.2d 708, 714-715 [214 P.2d 382]; *Ratliff* v. *Lampton,* 32 Cal.2d 226, 230 [195 P.2d 792, 10 A.L.R.2d 826]; *Covert* v. *State Board of Equalization,* 29 Cal.2d 125, 131 [173 P.2d 545]; *La Prada* v. *Department of Water & Power,* 27 Cal.2d 47, 50-51 [162 P.2d 13]; *Steen* v. *Board of Civil Service Comrs.,* 26 Cal.2d 716, 723-725 [160 P.2d 816]; and *Carroll* v. *California Horse Racing Board,* 16 Cal.2d 164, 168 [105 P.2d 110], which hold that a statute which allows certain administrative action "for cause" or "for good cause" impliedly calls for a hearing. Or, as in *Fascination, Inc.* v. *Hoover,* 39 Cal.2d 260, 269-271 [246 P.2d 656], it has been held that an ordinance contemplates a hearing if it allows certain action upon some fact being "ascertained."

It is, of course, perfectly proper to read a legislative command for a hearing into a statute in order to save its constitutionality; but in each of the cases cited by defendant there was some language in the enactment from which a legislative requirement for a hearing could be inferred. This is not the case here. We are particularly persuaded that the Act and especially section 4110 do not contemplate a hearing by the fact that until 1961, former section 4106, the predecessor of section 4110, called for a mandatory penalty of a flat 20 percent.[7] Of course no hearing is necessary when no discretion is involved and all that needs to be done is to divide a certain figure by 100 and multiply by 20. Apparently, when the law was changed in 1961 and the nature and size of the monetary penalty first became a matter of discretion, no thought was given to the fact that certain constitutional considerations now came into play.

---

[7]The awarding authority always did have discretion to cancel the contract. Until 1961 the penalty was payable to the State Treasurer for deposit in the General Fund.

We are not certain whether defendant now contends that plaintiff waived his right to a hearing when he entered into the contract, which specifically referred to the Act.

Unconstitutional requirements as a condition for the granting of a privilege have recently been much discussed. (*Bogel* v. *County of Los Angeles,* 68 Cal.2d 18, 21 [64 Cal.Rptr. 409, 434 P.2d 961]; *Parrish* v. *Civil Service Com.,* 66 Cal.2d 260 [57 Cal.Rptr. 623, 425 P.2d 223]; *Bagley* v. *Washington Township Hospital Dist.,* 65 Cal.2d 499, 503-509 [55 Cal.Rptr. 401, 421 P.2d 409]; *Fort* v. *Civil Service Com.,* 61 Cal.2d 331, 334 [38 Cal.Rptr. 625, 392 P.2d 385]; *Finot* v. *Pasadena City Board of Education,* 250 Cal.App.2d 189, 199 [58 Cal.Rptr. 520]; cf. *Sherbert* v. *Verner,* 374 U.S. 398, 404-406 [10 L.Ed.2d 965, 970-971, 83 S.Ct. 1790].) Although the values protected in those cases were perhaps loftier than the right asserted here, and although it is not the law that the government may never condition the receipt of benefits or privileges upon the nonassertion of constitutional rights, it is not shown that the circumstances attendant on penalizing contractors ''inexorably'' require the denial of a hearing or that the awarding authority has some kind of ''compelling'' interest in ex parte adjudication (*Bagley* v. *Washington Township Hospital Dist.,* 65 Cal.2d 499, 505 [55 Cal.Rptr. 401, 421 P.2d 409]; *Fort* v. *Civil Service Com.,* 61 Cal.2d 331, 337 [38 Cal.Rptr. 625, 392 P.2d 385]) of the question whether the penalty shall be zero or an amount which may mean financial ruin to many a contractor.

 Defendant also makes the rather curious point that if plaintiff should be correct on being entitled to a hearing, this action for declaratory relief is the wrong remedy, since section 1094.5 of the Code of Civil Procedure—the so-called ''administrative mandamus'' section—is applicable to all administrative decisions ''made as the result of a proceeding in which by law a hearing is required to be given. . . .''

Without deciding whether section 1094.5 applies in a situation where the Constitution demands a hearing, but the statute does not provide for one, it is well established that '' [a]s against a general demurrer, however, it is unimportant that plaintiff's pleading was not in form a petition for mandamus or certiorari.'' (*Brown* v. *State Personnel Board, supra,* 37 Cal.2d 634, 638; see also *Hostetter* v. *Alderson,* 38 Cal.2d 499, 500 [241 P.2d 230]; *Parker* v. *Board of Trustees,* 242 Cal. App.2d 614, 618 [51 Cal.Rptr. 653].)

The judgment must therefore be reversed. This does not mean that plaintiff will necessarily prevail. We have long ago learned that it is useless to underestimate the ingenuity of competent counsel. Nothing we have said is intended to preclude the possibility that in spite of the unconstitutionality of section 4110, defendant's answer may plead provable facts which, on some theory or other, will preclude this particular plaintiff from prevailing in this particular action.

The judgment is reversed.

Aiso, J., concurred.

STEPHENS, J.—I concur in the reversal.

I do not read the allegations of the amended complaint as strictly as did the trial court and my associates. While the pleading may be subject to special demurrer, under the liberal principles of pleading, the plaintiff alleged sufficient facts to bring it within the purview of Government Code section 4107, subdivision (a). I would therefore reverse on the estoppel ground as well as on the constitutional issue.

Respondent's petition for a hearing by the Supreme Court was denied August 13, 1969.