Drake, Ch. J.,
delivered the opinion of the court:
Under the contract sued on the claimant makes three demands :
I. The first is for increased compensation for transportation of supplies under the contract, claimed on the ground that the distances traveled by his trains in performing the transportation were greater than those for which he was paid.
For transportation from Fort Hays to Fort Larned ho was paid for a distance of 41 miles, when the court finds that the airline distance between these forts was 47 miles and 30 chains, and the traveled road was two miles longer.
For transportation from Fort Hays to Fort Dodge he was paid for a distance of 80 miles, when the court finds that the air-line distance between these forts was 84 miles and 50 chains and the traveled road was two miles .longer.
For the transportation from Fort Hays to Camp Supply he was paid for a distance of ICC miles. The road between these points passed by Fort Dodge, and the claimant admits that the distance allowed for that portion of it between Fort Dodge and Camp Supply, namely, 86 miles, was correct; but he insists that he is entitled to pay for the greater distance of 6 miles and 50 chains between Hays and Dodge than he was paid for. '
The claim, then, is for compensation for 9 miles and 30 chains between Hays and Larned; for 6 miles and 50 chains between Hays and Dodge$ and for a like distance between Hays and Camp Supply.
If the contract required that he should be paid according to the distance actually traveled by his trains, we should have no difficulty in awarding a judgment for compensation for those greater distances; but such is not the case. The stipulation in the contract governing the matter of payments is in these words:
" Transportation to be paid in all cases according to the dis- *161 tfince from tbe place of departure to tbat of delivery; the dis- ' dance to he ascertained and fixed hy the chief quartermaster of the Department of the Missouri, and in no case to exceed tbe distance by tbe usual and customary route.”
Tbe mere perusal of this stipulation can leave no question in tbe mind tbat tbe claimant agreed to be.paid for sucb distances ■only as should be “ ascertained and fixed by the chief quartermaster of tbe Department of tbe Missorm'” ; and it is found by tbe court that that officer, before any transportation bad been performed, fixed tbe distances to be paid for, and tbat tbe claimant Avas paid according to tbat fixation. And Avhen, in consequence •of tbe objection of tbe claimant's agent tbat tbe distances so fixed were too short, tbe matter AAras subsequently again brought before tbe chief quartermaster, be corresponded with officers at Fort Hays, and declared himself satisfied tbat tbe distances be bad at first fixed were corrcet.
Under these circumstances there would seem to be no recourse for tbe clabnant against tbat officer's decision, though it Avas in fact an erroneous one.
At tbe trial, howeA’er, tbe claimant’s counsel urged tbat tbe chief quartermaster, though be bad fixed, bad not legally ascertained, tbe distances.
We do not perceive exactly AA'bat is meant by a legal ascertainment in sucb a case. We liave been referred to no law prescribing any mode of ascertainment, or any description or quality of eA'idence upon which tbe ascertainment should be based. Upon what evidence or by what process o’f computation tbe officer should ascertain tbe distances was left wholly to him to determine, and neither tbe claimant, nor this court, nor any other tribunal could reAÜeAv bis judgment on tbat point and substitute another ascertainment.
Laying aside, then, tbe question of tbe legality of bis ascertainment, we come to tbe simple point whether be made any ascertainment at all; and upon this the facts found do not, as we conceive, admit of a doubt. It was bis official duty to make, sucb ascertainment, and tbe l;vw Avill presume tbat, before bo fixed tbe distances, be bad, in some way tbat satisfied bis OAArn judgment and sense of dtdy, ascertained to bis oaati satisfaction ' tbat tbe distances be fixed were correct. And Avhen, on tbe appeal of tbe claimant, be reconsidered and reinvestigated the, matter, and adhered to bis first conclusion, all question about *162 bis liaving in fact ascertained wbat tbe distances were should be laid aside. It matters not that be was in error; tbe only point here is whether be ascertained and fixed tbe distances, and we deem it clear that be did; and, having done so, tbe question of distances was, in orn1 view, finally closed between tbe claimant and tbe Government, unless on one side or tbe other there was fraud, of which there is no pretense.
Had be fixed too long a distance, and tbe claimant been paid thereby, tbe Government would have been as much entitled to recover back tbe excess paid him as be is to recover from it tbe alleged deficiency. Tbe simple answer to either claim would be that both parties agreed to abide by tbe ascertainment and fixation of distances made by that officer, and neither can overturn bis action and substitute that of this court in tbe premises.
II. Tbe claimant’s second demand is connected with tbe diminution, while in transitu, of tbe weight of tbe supplies, caused by unavoidable shrinkage, wastage, or drying up of solid stores, and unavoidable leakage of vinegar, molasses, and other fluids. This diminution was found by boards of survey, organized as required by tbe contract, not to have been attributable to neglect or want of proper care on tbe part of tbe claimant; and their finding on that point is, by tbe terms of tbe contract, conclusive in bis favor. Tbe question in that connection is, not whether be is accountable to tbe Government for tbe loss of weight in transitu, but whether be was entitled to be paid for tbe transportation of tbe entire number of pounds of supplies delivered to him at tbe place of departure, when be delivered all the supplies at tbe place of delivery, but with unavoidable diminution of weight. He contends that be was so entitled; while tbe Government claims that be should have been paid oidy for tbe actual number of pounds which tbe stores weighed when delivered by him at tbe place of destination, and that be should not be paid for tbe weight lost as before stated.
Were there ni tbe contract nothing bearing on this point, we should have to decide it on general principles of law; but as tbe parties embodied there their agreement on tbe subject, we must be governed by that. There are two clauses in tbe contract affecting this subject, the first of which is as follows:
“For loss of weight due to shrinkage, a,nd for leakage of vinegar, molasses, or other liquids, tbe contractor shall not be held liable if tbe packages are delivered in good order and condition, *163 and the board of survey ,shall be satisfied that such shrinkage or leakage did not arise from neglect or want of care on the part of the contractor or his agent.”
. The insertion of this provision in the contract shows that it was known to both the claimant- and the contracting officer that .stores transported over the routes embraced in the contract were subject to unavoidable shrinkage and leakage, and that they agreed upon a rule which should govern the rights and liabilities of the claimant in such case. That rule simply relieved him from liability to pay for the lost weight if the board of survey should be satisfied that it did not arise from neglect or want of proper care on his part. It did not refer to the matter of payment or non-payment of freight on the weight lost by shrinkage or leakage.. But Ave find another clause in the contract which seems to us to cover that point. It is as follows:
“Upon the arrival of the train at its place of destination or delivery, the officer of the Quartermaster’s Department at the l>oint- of delivery shall indorse on the bill of lading, in accordance with the finding of a board of survey, as hereinafter provided, stating the quantity and condition of the stores delivered, upon which indorsement payment shall be made as per contract.”
"When it was thus stipulated that the officer should “indorse on the bill of lading the quantity of the stores delivered,” and that the claimant should be paid upon that indorsement, and when he was, by other terms of the contract, to be paid according to the number of pounds transported, it is clear to us that the word quantity must be held to include not only the supplies shipped and transported, but also their weight when handed over at the place of delivery. If so, then the claimant agreed to receive pay of freight for just so many pounds as he actually transported to and delivered at that place, and no more. Xo other rule, seems to us capable of just and practical enforcement. The shrinkage and leakage would, in the nature of the case, be gradual, beginning immediately after the shipment of the stores, and continuing thougliout the whole period of their transportation, and neither party could in any way find out, except by daily unloading and weighing the stores, what the daily diminution of weight was. As such a daily proceeding was impracticable, it was impossible for either party to know, or even guess with any approach to accuracy, at what point on the route there Avas a diminution in weight of any given number of pounds, and *164 therefore quite impossible to fix any sensible rule or devise any feasible plan by which the gradual loss of compensation might be accurately adjusted to the gradual loss of weight. That the claimant knew all this beforehand, and that the probable percentage of freight to be lost through the inevitable loss of weight was a matter of calculation entering into the rate of compensation he agreed to receive for work done under the contract, we think there is no reason to doubt; and yet he took no pains to protect himself against such loss of freight, though he carefully guarded himself against responsibility for the value which he certainly foresaw would be lost through shrinkage and leakage not resulting from fardt of his.
The fair conclusion from this is, that he was willing to bear that loss of freight, and to be paid only for the transportation of the number of pounds which he should deliver at the place of destination. This he has been paid, and in our judgment he cannot legally claim more.
III. The third demand of the claimant is for the sum of $608.09, which was, by the quartermaster who settled and ]>aid his accounts, deducted from an amount due him and is still withheld.
The finding sets forth fully the facts connected with this item. Briefly stated, they were these: The claimant’s trains, proceeding from Fort Harker to Fort Sill, were, by bad roads, bad weather, and swollen streams, delayed in arriving at the latter place long beyond the time contemplated by the contract for the journey; in consequence of which the post at Fort Sill became short in supplies, and the commanding officer there, to assist in hastening forward the stores, sent fifteen public mule-teams to meet the claimant’s ox-trains, and bring supplies to the post more quickly than the latter could. The mule-teams took supplies from claimant’s trains, and so relieved the post. In that service ten of those teams were out six days and five more out fourteen dajrs, and for the forage and use of the teams and pay and rations of teamsters the quartermaster at Fort Sill charged the claimant the said sum of $608.99, which was retained from the claimant’s subsequent earnings under the contract.
We are of the opinion that there was no authority for withholding that sum. The sending of the teams was not done at claimant’s request, but was purely voluntary on the part of the officer at Fort Sill; nor did the contract require or authorize them to *165 be sent in sncli case; nor did be therein agree to pay the government for such a service; nor were the teams and teamsters placed at Fort Sill to be, in effect, hired out at so much a day; nor did the teams, while on that service, cost the government, so far as appears, a dollar more than they would if they had remained at the post. There might -possibly be found some words in the contract which might give the Government some judicial recourse against the claimant under such circumstances, but none that should place him so entirely at the will of officers of the Quartermaster’s Department as he would be if this transaction should be sustained.
Judgment for $008.99 in favor of the claimant will be entered.