## QUINN v. UNITED STATES.

A contract between the United States and A., for his removal of the rock at the entrance of a certain harbor, provided that he should complete the work at a specified time, and that if he should delay or be unable to proceed with it in accordance with the contract, the officer in charge might terminate the contract, and employ others to complete the work, deducting expenses from any money due or owing to A., who was also to be responsible for any damages caused to others by his delay or non-compliance. Payment upon the completion and acceptance of the several sections was to be made, reserving ten per cent therefrom until the completion and acceptance of the whole work. The work was not completed at the specified time, chiefly in consequence of the failure of a third party to deliver to A. the necessary explosive, and the officer in charge terminated the contract; but the evidence does not show that his action was wrongful. The work was completed by other parties at much lower terms. A. brought suit against the United States. *Held,* that the United States having sustained no loss by the failure of A., he is entitled to the reserved ten per cent, but not to the profits that he would have made had he performed the contract, nor to the difference between the contract price and that at which the work was completed by others.

APPEAL from the Court of Claims.

The facts are sufficiently stated in the opinion of the court.
*Mr. T. D. Lincoln* for the appellant.
*The Attorney-General* and *The Solicitor-General, contra.*

MR. JUSTICE MILLER delivered the opinion of the court.

On the tenth day of August, 1867, David Quinn, the appellant's intestate, entered into a written contract with J. B. Wheeler, of the engineer corps for the United States, to remove the rock at the entrance of Eagle Harbor, Michigan, and deposit it at such point as the engineer in charge should direct; and he agreed to commence the work on or before the first day of September thereafter, and complete the removal of the rock on or before Oct. 1, 1868. "It was also agreed that if, in any event, the contractor shall delay, or be unable to proceed with the work in accordance with its terms, the engineer officer in charge shall have full right and authority to take away the contract, and employ others to complete the work, deducting the expenses from any money that may be due and owing him, and the contractor will be responsible for any damages caused to others by his delay or non-compliance."

He was to be paid for his work as sections of it were completed to the required depth, the government reserving ten per cent from such payments until the whole was completed and accepted.

Quinn having failed to complete the work by the 1st of October, it was taken from him on the 9th of November, 1868, and, after advertising, let to other parties. For all the work completed he was paid at the contract price, except that the government retained ten per cent on the estimated sum.

He brings this suit in the Court of Claims on the contract, and his petition being dismissed he appeals to this court.

He claims that he was wrongfully prevented from completing his work, and is entitled to the profits he would have made, to wit, $58,682; or, if not this, that the United States, by letting the contract to other parties, had the work done for $33,060 less than they agreed to pay him, and he claims that sum. He claims, in any event, the ten per cent retained, amounting to $1,740.

In support of the claims for profits on work not performed by him, two propositions are advanced: —

1. That although the time had elapsed within which claimant was bound by the contract to complete the work, and it

was unfinished, the engineer had no lawful authority to terminate the contract, because the fault in the delay was in the government and its officers.

2. That conceding the authority to terminate the contract was lawfully exercised, the consequence was that when the work was done by the government, or by other contractors at its instance, such work was done at his risk of loss or of profit, and if, when finished, it cost the United States more than it would if done under his contract, he was responsible for the loss, and if done for less, the gain was his.

We cannot concur in this latter proposition.

It seems very doubtful if, in the event of the termination of his contract under the clause authorizing the engineer to do so, the contractor is liable to the United States for any thing beyond the ten per cent retained. This ten per cent is retained, in the language of the contract, until the whole shall be completed. It is retained as security for that end. The work is to be completed by others, and the expenses deducted from any money that may *be due him.* He is to be responsible for damages caused to *others* by the delay. If, therefore, he is responsible to the United States beyond the sum due him at the time the contract is taken from him, it is not by the express terms of the contract, but on the general doctrine of damages on failure to fulfil any contract.

So, on the other hand, we think it equally clear that when his contract is rightfully terminated, he is entitled to no further rights in regard to its performance by others. The government does not, by reason of being compelled by his failures to resume control of the work, do so for his benefit, but for its own. They do not thus become his agents to do the work for him which he failed to do, and let him reap the profits of a work which he refused or neglected to perform.

Nor are we able to see that the contract was wrongfully taken from him.

It may very well be contended that the engineer in charge is by the agreement of the parties made the judge of the existence of "such delay or inability to proceed with the work in accordance with the contract" as justifies him in taking it away, and that his action in that regard is conclusive. But the

counsel for the United States have not assumed that ground here, and it is not necessary to the decision of the case.

It may be safely asserted, however, that it will be presumed that his action was well founded until it is impeached by satisfactory evidence, and especially where, as in this case, the time limited for the completion of the work had passed. Such evidence is wanting in this case. It is true that there was some delay in the autumn of 1867 on the part of the engineers in locating the precise point where the rock was to be excavated and in determining the low-water mark with reference to which all the work was to be done, and this was not perfected until February, 1868. But there is no evidence that Quinn demanded that this should be done sooner, or that he desired to commence his work earlier.

There is satisfactory evidence that his delay was caused mainly, if not solely, by his inability to procure the nitroglycerine which, under his plan of working, was the only explosive that he could use. He had the entire work honeycombed with cells drilled for the reception of this explosive in due time, and if he could have procured it, would have completed the work in time, or at least his contract would not have been taken away. The excuse is that the party who had contracted to deliver the nitro-glycerine failed in business and failed to deliver. But the authority of the engineer to terminate the contract did not depend on the value of excuses or the difficulty of performance. He had "full right and authority" to do this for inability to proceed with the work according to the contract, as well as for delay.

There was both delay and inability in this case, and we do not see that they were due to any failure on the part of the government.

In this connection it is said that Quinn should receive pay for the holes drilled for reception of the explosive in that part of the work not completed when it was taken from him. But the finding of the Court of Claims is that this was not used by the government or by the subsequent contractor, because the latter used gunpowder, which could not be profitably exploded in the holes drilled for the nitro-glycerine.

We think that the Court of Claims was right in reject-

ing the two first items of the claim as we have mentioned them.

But it is otherwise with regard to the ten per cent of the price of the work completed, retained by the government.

We have already seen that this was retained for the purpose of securing the completion of the work, and that if not completed by the contractor it was to be used in paying the expenses of such completion. In our view, it is a fair construction of this part of the agreement that the money retained under it is for security that the contractor will not abandon his work, but will proceed in it with due vigor, and for indemnity to the United States in case he fails to do this. Unless, therefore, the government has sustained some loss, some pecuniary or legal damage by his failure, the money which he has fairly earned should be paid to him when the work which he agreed to do has been completed, though by others. In the case before us the United States made a clear gain of $33,000 by taking away his contract and making a new and more advantageous one with another person. Under such circumstances, the United States no longer has a right to the money withheld for indemnity and security, because the risk is over, the event has occurred, and instead of loss or damage there has been a gain by the transaction.

The judgment of the Court of Claims dismissing the petition will therefore be reversed, and the case remanded to that court with directions to render a judgment for claimant for the sum of $1,740; and it is

*So ordered.*