Richardson, J.,
delivered the opinion of the court:
This action is brought upon a contract made in 1867 by William and John Henegan, who were'copartners—
“ To furnish all the materials (except the right of way and burrow-pits), which shall be of sound and good quality, and to perform all the labor necessary in excavating the prism and in constructing and finishing, in every respect, in the most sub stantial and workmanlike manner, the embankment-wall of the canal, or so much thereof as the [then] appropriation of $700,000' will pay for, the same being located for the improvement of the Des Moines Rapids of the Mississippi River, and the. work to be done, in all respects, according to the specifications hereto, annexed.
Work was to commence on or before October 1, 1867, and the whole ivas to have been completed on or before July!., 1869, unless unavoidably prevented by high watSr, in which, case it was to have been completed on or before October 30.. 1869.
A bond, with sureties, in the penal sum of $175,000, was. given to the defendants by the contractors, for the faithful performance of the -work.
The undertaking was a large one, and the findiugs,show that after the contractors had worked slowly on for one year they were unable to proceed further by reason of the low price at which they had agreed to do the work, and their inability to raise money with which to carry it on. They were paid regularly for the work done during each month, according to the estimates made by the engineer in charge, reserving 15 per cent., as provided in the contract, from September, 1867, to September, 1868, inclusive, when, in October, théy notified the defendants’ officers that they could not pay their workmen for Sep *283 tember, and requested tbe defendants to make the payments for them. This led to the abandonment of the contract on their part, and it was finally declared by the engineer in charge, by orders from the department at Washington, to be abandoned, and public notice was made of the fact by an advertisement in a newspaper at ICeoknk on the 2Gth of October, 1868.
During the year that the contractors were engaged they did a large amount of work, estimated by the engineer iu charge to entitle them to the sum of $160,760.62. They received payments in money to themselves, and by payments to tlieir laborers, as they requested, to' the amount of #146,748,72, leaving $14,011.90 reserved as provided in the contract. The defend; ants might have reserved a larger amount, to wit, 15 per cent, of the. whole amount earned, and they did so tit- first, but the reservation was reduced by the payment of the contractors laborers by the defendants, at the request of the contractors themselves.
When the work was abandoned by the Henegans the defendants’ officers proceeded to advertise for proposals for completing the work, and upon bids made in response thereto they relet the same to another party, as the contract provided they might do. The damages which the defendants suffered by reason of the higher cost of the work which they were subjected to ou account of the Henegan contract and the making of a new contract are found to be $174,024.15.
The claimants now demand not only the amount reserved and held by the defendants as a guarantee for the performance of the contract, but they’ allege that they did much work which was not specifically mentioned iu the contract, and for which they insist that they are entitled to be paid, as upon a quantum meruit, without reference to the prices named in their agreement. They also demand $50,000 damages, because, as they allege, they were unlawfully’ expelled from the work by the officers of the United States, and if they had been permitted to finish the same according to the contract they would have realized that sum as profits.
The findings show that the contractors themselves abandoned the work, and that the defendants suspended the contract fox' that reason. It was expressly agreed “that in case the execution of this contract shall be suspended by the party of the first part on account of the lack of funds or for any other cause, no *284 claim for prospective profits on work not done shall be made or allowed.” So the claim for damages on account of loss of prospective profits is not sustained.
What was the value of ahy work done by the contractors which may not harm been within the specified terms of the contract, or whether or not there was any such work done, we have not deemed it necessai’y to determine. As to those matters the contractors are concluded by the contract itself and the action of the parties thereunder.
It was agreed as follows:
“ENGINEER TO DETERMINE QUANTITIES.
“And to provide for a speedy and just settlement, and to prevent disputes, it is hereby further mutually agreed that the engineer in charge of the work herein contracted to be done ■shall in all cases determine the amount or quantity of the several kiuds of work which are to be paid for under this contract, and the amount of compensation to be paid therefor, and shall, within ninety days after the work shall in all respects have been completed according to the terms and conditions of this contract, present a final account and estimate of the same, which shall be final and conclusive on both parties to this contract; and Brevet Major-General James H. Wilson, U. S. A., will then pay to the parties of the second part the balance due, including fifteen per cent, retained on monthly estimates.
“ALTERATIONS AND DIRECTIONS TO BE COMPLIED WITH.
“And the said parties of the second part hereby further agree to perform all the work contracted for as specified in this contract; but any alteration in the form, dimensions, location, or manner of doing the work, directed by the engineer in charge, beyond what is contemplated in the specifications annexed, which shall increase the cost of the same, shall be done as directed, and the engineer shall decide in writing what increased compensation shall be paid for such alteration, which writing shall be attached to and thereafter form a part of this contract; •and the parties of the second part agree to do the work at the price established by the said engineer.
“INCREASED QUANTITIES WITHOUT CHANGING CHARACTER OR WORK.
“In case any of the quantities exhibited at the letting shall be increased or diminished without changing the character of the work, such increase shall be paid for at the prices in this •contract for the same class of work, and the parties of the sec *285 ond part agree to do tbe work at tbe prices stipulated, without making- any claim for damages in consequence of such increase or diminution.
“MONTHLY ESTIMATES. .
“And it is further agreed that approximate estimates shall be made at the end of each month, under the direction of said engineer, for all work doife under the contract for said month;, and that the amount of said' estimate shall be paid (less fifteen per cent, retained as a guarantee for the performance of the contract) by the middle of the succeeding month.”
From these proAisions it will be seen that the engineer in charge of the work was in all cases to determine tbe amount- or quantity of the several kinds of work, and the compensation-to be paid therefor; that the contractors Avere required to do-any work required, on account of alterations in the form, dimensions, location, and manner of the work beyond what was contemplated in the specifications; that the engineer was to decidewiiat increased compensation'should be paid therefor, and that the contractors should do the work at the price established by the engineer.
At thé end of each month during the progress of the work the engineer in charge made his estimate of the work done-during the month, specifying the same in detail and fixing the-prices to be paid. Not only that, but these estimates and pricesAvere transferred to vouchers, and the contractors were paid, the amount thus found due, and in every case they receipted for the same upon such Avoucher “ in full payment of the above account.”
After the abandonment of the Avork the engineer in charge made a final account and estimate of the ivliole work. From-this and the monthly account receipted by the contractors, after deducting the payments made to and for them, it appears that the balance is less than the 15 per cent, which the defendants have a right to retain. By the estimates of the engineer and the receipts in full by the contractors the claimant is concluded. (Kihlberg v. United States, 13 C. Cls. R., 148; affirmed on appeal, 97 U. S. R., 398. Sweeny v. United States, 15 C. Cls. R., 400; Case et al. v. United States, 11 id., 712; Comstock v. United States, 9 id., 141; Child et al. v. United States, 12 Wall., 232, 7 C. Cls. R., 209; Hawkins v. United States, 12 id., 181; affirmed on appeal, 96 U. S. R., 689.)
*286 It remains to be considered whether,or not the defendants can still retain this balance. We hold that they can do so. The 15 per cent, reservation is three times referred to iu this contract, as follows: The defendants are therein required to pay the monthly estimates, “less fifteen per cent, retained as a guarantee for the performance of the contract.” 2d. In case the contract should be abandoned, “the fifteen per cent, retained from the monthly estimates shall be considered as forfeited to the party of the first part.” 3d. “Payment shall be made when the work herein contracted for shall have been delivered and accepted, reserving fifteen per centum from the payment until the whole work shall have been so delivered and accepted.”
. As the contractors abandoned their contract, and never fully performed their agreements, and as the defendants suffered damages for that reason to a much greater extent than the amount of the reservation, the claimants are not entitled to recover the same, but it is forfeited to the defendants. It would have been otherwise had .the United States sustained no loss or damage by the failure of the contractors to go on with the work according to their agreement. (Quinn v. United States, 99 U. S. R., 30.)
The defendants havefiled and pleaded a counter-claim for damages suffered by them on account of breaches of the contract by the Henegans, which damages are found to have amounted to $174,024.15. This they are entitled to recover if it has not been released by the action of Congress.
On the 3d of March, 1871, the following act was passed (16 Stat. L., 700):
a £5 2 c_i Q c o && e O S3 I ^ I ^ p § re © > £3 í> Q
“ Be it enacted, cue., That Charles Cooper, Goshorn A. Jones, Jerome Rowley, William Henegan, and John Henegan be, and they are hereby, released and. discharged from all liability to the United States under and by reason of their bond executed thereto to secure .the faithful performance by the said William Henegan and John Henegan of their contract with the Government of the United States for the improvement of Des Moines Rapids of the Mississippi River, in the State of Iowa; and that the action at law now pending in the circuit court of the United States for the sixth circuit and northern district of Ohio to enforce said bond be discontinued by the proper officer of this government, at the cost of the defendants.”
*287 The bond referred to in this act was the identical bond given by tlie Henegans for the faithful performance of the contract to which this counter-claim applies. In fact, this counter-claim is for precisely the same cause of action as was the suit on that bond, which was discontinued by act of Congress at the cost of the defendants. In our opinion, it was the intention of Congress, in passing that act, to relieve the contractors from further liabilities to suit in any form for non-performance of their ■contract, and that the act has that effect.
The act was passed for the relief of all the parties, not only the sureties, but the principals also. It is to be presumed that Congress intended substantial relief — not merely relief from suit in thatone particular form — upon the bond. It would be littleor no relief to the contractors that an action on the bond would be abandoned if the government could maintain a suit against them in another form upon the same cause of action.
We cannot but hold that the act has discharged this counter-claim, which Congress has the right to do.
The liabilities of the contractors and their sureties on the bond which the act of Congress thus discharged was the damage sustained by the United States by reason of the non-performance of the obligations of the contractors, less the amount reserved as a guarantee, which had been forfeited, because that was all that could have been recovered on the bond. Such discharge, therefore, did not relieve the contractors from their obligation to prove that they had performed their part.of the contract, or that the defendants had suffered no injury by their default, as a condition precedent to the recovery of the amount reserved. This case materially differs from that of Sauner, administrator of Hall, decided at the present term, where a specific amount had been released by act of Congress.
The judgment of the court is that neither party is entitled to recover in this action, and that the petition of the claimants and the counter-claim of the defendants be dismissed.
Nott, J., did not sit at the hearing of this case, and took no part in the decision.