[Civ. No. 11558. Fourth Dist., Div. Two. Nov. 16, 1971.]

HARSCO CORPORATION, Plaintiff and Respondent, v.
DEPARTMENT OF PUBLIC WORKS, Defendant and Appellant.

COUNSEL

Harry S. Fenton, Kingsley T. Hoegstedt, Orrin F. Finch and John R. Bell for Defendant and Appellant.

Munns, Kofford, Hoffman, Hunt & Throckmorton and Gordon Hunt for Plaintiff and Respondent.

OPINION

**KAUFMAN, J.** — From that portion of the judgment awarding plaintiff $7,012.46 as against defendant Department of Public Works (hereinafter Department), Department appeals.

THE FACTS

The essential facts are not in dispute. In October 1968, the Department entered into a written contract with defendant Ashby Construction Co. (hereinafter Ashby) for the construction of a bridge in Riverside County. Pursuant to Government Code section 4200 (now Civ. Code, § 3247) Ashby filed with the department a labor and material bond executed by United Bonding Insurance Company. Between October 15, 1968, and February 12, 1969, at the request of Ashby, plaintiff furnished scaffolding equipment used in the work of improvement having a reasonable value of $7,012.46. Not having been paid, plaintiff filed a verified claim and notice to withhold (hereinafter stop notice) with defendant Department on March 19, 1969.[1]

Before receiving plaintiff's stop notice, the Department had paid to Ashby a number of progress payments. As of the date plaintiff filed its stop notice, Ashby had been fully paid for its partial performance under the contract except that the Department held retention funds in the amount of $21,070.05 which had been deducted from the progress payments due Ashby pursuant in part to Government Code section 14402 and, apparently, in part pursuant to Government Code section 14376.[2] The substance of both sections was apparently embodied in Ashby's contract.

---

[1]Other subcontractors and suppliers had filed similar stop notices as early as February 3, 1969.

[2]Prior to an amendment in 1970, not here material, Government Code section 14402 provided in pertinent part: "Payments upon contracts shall be made as the department prescribes upon estimates made and approved by the department, but progress payments shall not be made in excess of 90 percent of the percentage of actual work completed plus a like percentage of the value of material delivered on the

Ashby had defaulted in performance of the contract, and its control over the project was terminated by the Director of Public Works on March 20, 1969. Ashby's surety, United Bonding Insurance Company, elected not to complete the project, and a completion contract was awarded to Massey Sand and Rock Co. pursuant to Government Code section 14396. Massey completed the contract according to the original plans and specifications at a cost of more than $26,000 in excess of the price prescribed by the contract between the Department and Ashby.

Upon receiving plaintiff's stop notice, defendant Department did not withhold any of the retention funds for the purpose of paying plaintiff's claim. Instead, the retention funds were utilized for completion of the project and, thus, paid to Massey.

Both Ashby and United Bonding Insurance Company were named as defendants in the action. Ashby defaulted, and the bonding company stipulated to judgment against it. Accordingly, the judgment awards plaintiff recovery against those defendants.[3] As to defendant Department, the trial court found that the $21,070.05 in retention funds had been "earned" by Ashby; concluded that the retention funds were properly subject to plaintiff's stop notice; and, accordingly, rendered judgment against the Department in the amount of $7,012.46, "said sum to be paid out of the $21,-070.05 earned retention held by the defendant DEPARTMENT . . . ."[4]

---

ground or stored subject to or under the control of the State, and unused. The department shall withhold not less than 10 percent of the contract price until final completion and acceptance of the project."

The pertinent portion of Government Code section 14376 provides: "Every contract shall contain a provision in regard to the time when the whole or any specified portion of the work contemplated shall be completed, and shall provide that for each day completion is delayed beyond the specified time, the contractor shall forfeit and pay to the State a specified sum of money, to be deducted from any payments due or to become due to the contractor."

Department asserts that $14,150.11 was withheld pursuant to the 10 percent mandatory retention provision of Government Code section 14402 and $6,919.94 withheld due to unsatisfactory progress, presumably pursuant to Government Code section 14376. Although Department requested special findings as to the two separate amounts, the trial court made no distinction and simply found that the Department had retained $21,070.05. Except to the extent hereinafter indicated in the text, we do not find the distinction material.

[3]The briefs indicate that the bonding company is in liquidation.

[4]As against the Department's contention that, in any event, plaintiff should be entitled to no more than its pro rata share of the retention funds (see former Code Civ. Proc., § 1190.1 subd. (d) now Civ. Code, § 3167), the court concluded that the Department had waived or was estopped from asserting this contention by its failure to interplead the various stop notice claimants or consolidate the various stop notice actions (see former Code Civ. Proc., § 1197.1 subd. (d) now Civ. Code, § 3214). Although the Department also challenges the propriety of this conclusion of the trial court, our disposition of the case on the primary issue makes it unnecessary to reach this problem.

## ISSUE AND RESOLUTION

The issue presented is whether, on a work of public construction, funds withheld from a contractor by a public agency pursuant to Government Code sections 14402 and 14376 are subject to the valid stop notice of a supplier or subcontractor when the cost of completion exceeds the original contract price and consumes all of the retained funds. Defendant Department contends they are not. We agree.

The stop notice procedure is statutorily prescribed. Primarily applicable to the case at bench is former Code of Civil Procedure, section 1190.1, subdivision (c) (now Civ. Code, §§ 3161 as to private works and 3186 as to public works). ■ Under the statute a stop notice reaches only monies or bonds due or to become due the contractor. (Former Code Civ. Proc., § 1190.1, subd. (c) now Civ. Code, § 3186; see also former Code Civ. Proc., § 1192.1, subd. (d) now Civ. Code, § 3193.) The question is, therefore, whether the $21,070.05 retained by the Department constituted monies due or to become due Ashby when the cost of completion substantially exceeded the unpaid balance of the contract price. We hold it did not.

At the outset we note the trial court's finding that Ashby had "earned" the retained monies. That is true in a sense as to the funds retained pursuant to Government Code section 14402. Had it been possible to complete the project within the contract price, those funds would have been due Ashby, and, thus, subject to plaintiff's stop notice. (See Gov. Code, § 14399; also *Quinn* v. *United States,* 99 U.S. 30, 34 [25 L.Ed. 269, 270].) ■ To the extent, however, the funds were retained pursuant to Government Code section 14376, they cannot be considered to have been "earned." Retentions pursuant to that section constitute statutorily approved liquidated damages. (*Silva & Hill Constr. Co.* v. *Employers Mut. Liab. Ins. Co.,* 19 Cal.App.3d 914, 918-920 [97 Cal.Rptr. 498].) In any event, this finding of the trial court cannot be considered equivalent to a finding that the retained funds were due or to become due Ashby, for Department expressly requested special findings on that point, and no such findings were made. Moreover, if the finding that the monies were "earned" were construed as equivalent to a finding that they were due or to become due Ashby, the finding would be unsupported by the evidence and contrary to law.

Government Code section 14402 (see fn. 2, *ante*) prohibits the Department from making progress payments in excess of 90 percent of the estimated value of labor and materials and compels it to withhold not less than 10 percent of the contract price until final completion and ac-

ceptance of the project. Government Code section 14399 provides in substance that if the control of the contractor is terminated by the Director the contractor is not entitled to receive any portion of the monies retained until the work is fully completed and, then, only if the unpaid balance exceeds the sum of the amount expended in finishing the work. ■ It is apparent, therefore, that the determination as to whether such retention funds are due or to become due the contractor must abide completion of the work. Where the cost of completion exceeds the unpaid balance of the contract including the amount of the retention funds, the retention funds cannot be considered to have been due or to become due the contractor within the meaning of Code of Civil Procedure section 1190.1 subdivision (c) (now Civ. Code, § 3186). (Gov. Code, §§ 14399 and 14402; *Dorris* v. *Alturas School District,* 25 Cal.App. 30, 32-33 [142 P. 795].)

The venerable *Alturas School District* case, *supra,* constitutes persuasive, if not controlling, authority. The applicable statute was then Code of Civil Procedure section 1184 (Stats. 1911, p. 1315), the pertinent language of which was substantially the same as that in Code of Civil Procedure section 1190.1 subdivision (c) (now Civ. Code, § 3186). (See *Dorris* v. *Alturas School District, supra,* 25 Cal.App. at p. 32.) The essential facts of that case are identical to those in the case at bench except as to dollar amounts, the percentage of retention and the fact that the retentions were there made wholly pursuant to the terms of the contract, whereas in the case at bench the retentions were made pursuant to both statutory mandate and the terms of the contract. The court there held that the retention funds were not monies due or to become due the contractor and, thus, were not subject to the plaintiff's stop notice. (*Dorris* v. *Alturas School District, supra,* 25 Cal.App. at pp. 32-33.)

Plaintiff contends that the *Alturas School District* case is no longer good law. First it is said that the *Alturas* case is inconsistent with *Sunlight Elec. Supply Co.* v. *McKee,* 226 Cal.App.2d 47 [37 Cal.Rptr. 782] and *United States Fid. & Guar. Co.* v. *Oak Grove Union School Dist.,* 205 Cal.App.2d 226 [22 Cal.Rptr. 907].

The *Sunlight* case in no way conflicts with the *Alturas* case. The question confronting the court in *Sunlight* was whether the filing of a notice of pendency of action nine days after the statutory five-day limit constituted substantial compliance. It was held that it was. (226 Cal.App.2d at p. 51.) In explaining the stop notice procedure in respect to public works, the court expressly noted that the stop notice procedure was permitted ". . . for intercepting *funds due* from a public agency to the contractor." (226 Cal.App.2d at p. 50; italics supplied.)

Likewise, we find no inconsistency between *Alturas* and the *Oak Grove* case. *Oak Grove* had nothing whatever to do with the right of a stop notice claimant to retention funds. In that case the stop notices had been filed prior to the last progress payment made to the contractor (205 Cal.App.2d at pp. 229 and 236), and the court correctly held that payment to the contractor *after* filing of the stop notices subjected the school district to liability to the stop notice claimants and that the contractor's surety, having completed the job, was subrogated to the rights of the stop notice claimants. (205 Cal.App.2d at pp. 233-234.) The long quotation from *Calhoun* v. *Huntington Park First Sav. & Loan Assn.*, 186 Cal.App.2d 451, 459-460 [9 Cal.Rptr. 479] based on Code of Civil Procedure section 1190.1 subdivision (h) (see discussion of this section, *infra*) found at page 230 of the *Oak Grove* opinion was directed to the issue of subrogation and has no materiality to the case at bench.

Next plaintiff contends that the rationale of the *Alturas School District* case that the public agency's liability to a stop notice claimant is measured by its liability to the contractor under the terms of the contract (25 Cal. App. at p. 33) has been eroded or repudiated by later cases. It is asserted that the rule now is that it is immaterial that no money is owing to the contractor; that the parties cannot by their agreement control the distribution of construction funds so as to defeat the rights of stop notice claimants. In support of this proposition plaintiff cites *A-1 Door & Materials Co.* v. *Fresno Guar. Sav. & Loan Assn.*, 61 Cal.2d 728, 733-734 [41 Cal.Rptr. 85, 394 P.2d 829]; *H. O. Bragg Roofing, Inc.* v. *First Federal Sav. & Loan Assn.*, 226 Cal.App.2d 24, 27 [37 Cal.Rptr. 775]; *Rossman Mill & Lbr. Co.* v. *Fullerton S. & L. Assn.*, 221 Cal.App.2d 705, 709-710 [34 Cal.Rptr. 644]; *Calhoun* v. *Huntington Park First Sav. & Loan Assn.*, *supra*, 186 Cal.App.2d 451, 458-460 and similar cases.

■ We first note that payments to the contractor in the case at bench, while made pursuant to the contract, were controlled by the mandatory provisions of Government Code sections 14402 and 14376. The obvious purpose of those statutes as well as Government Code section 14399, *supra*, is to protect the public coffers, and this purpose would be defeated by holding that funds retained pursuant to these statutes are subject to a stop notice notwithstanding that the cost of completion exceeds the unpaid balance of the contract price. ■■ Various parts of the codes must be construed in harmony if possible, and, insofar as Code of Civil Procedure section 1190.1, subdivision (c) applies to public works, it should not be construed in such a manner as to defeat the manifest purpose of Government Code sections 14399, 14402 and 14376.

Moreover, none of the cited cases are in point. Each of them was con-

cerned with a stop notice directed at a construction lender (in a private work of construction) who held loan funds earmarked for construction and each was decided under the provisions of former Code of Civil Procedure section 1190.1, subdivision (h) (now Civ. Code, §§ 3159 and 3162). There is a vast difference between the provisions of subdivision (h) of section 1190.1 and subdivision (c) of the same section. Subdivision (h) is premised upon the existence of a loan fund earmarked for payment of construction expenses and, upon the filing of a *bonded* stop notice requires the lender to withhold ". . . out of said fund sufficient money to answer such claim. . . ." As previously noted, subdivision (c) of section 1190.1 requires the withholding only of monies or bonds ". . . due or that may become due to such contractor to answer such claim. . . ." The provisions of subdivision (h) were expressly made inapplicable to public works. (Former Code Civ. Proc., § 1190.1, subd. (j).)[5]

The material difference in language between subdivisions (c) and (h) of Code of Civil Procedure section 1190.1 amply explains the result in the cases cited by plaintiff dealing with stop notices on construction loan funds. (See *A-1 Door & Materials Co.* v. *Fresno Guar. Sav. & Loan Assn., supra,* 61 Cal.2d at pp. 733-734.)

Admittedly there may be a theoretical inconsistency in imposing upon a construction lender potential stop notice liability different from that of the Department. It would be reasonable to suppose that subcontractors and materialmen rely upon a government contract to the same extent they would upon a construction loan fund. A lender, of course, is in a different relationship to materialmen and suppliers than is the Department. The lender is itself a creditor, and as between the construction lender and the materialmen and suppliers the question is one of priority of creditors. Moreover, construction lenders are involved in private, not public, works of construction, which would, perhaps, justify the difference in treatment. In any event, the difference in treatment has been established by the Legislature in using different language in subdivisions (h) and (c) of Code of Civil Procedure section 1190.1 and in the enactment of Government Code sections 14376, 14399 and 14402. It is not the province of the courts to inquire into the wisdom of legislative enactments.

There is in the *A-1 Door* case a dictum to the effect that the liability of an *owner,* as opposed to a construction lender, is not limited to his liability under the contract. (61 Cal.2d at p. 733.) However, the court was not there confronted with the problem of the liability of an owner but that of

[5]Inasmuch as the reenactment of the mechanic's lien laws provides separate treatment for public and private works (see Stats. 1969, ch. 1362) there was no occasion for the reenactment of subdivision (j) of Code of Civil Procedure section 1190.1.

a construction lender, and, ultimately, the decision was properly rested upon the language of subdivision (h) of Code of Civil Procedure section 1190.1. (61 Cal.2d at pp. 734-735.) Moreover, the authoritative underpinnings of the dictum are found, upon analysis, to be unsound. As to the dictum, the court in *A-1 Door* relied upon *Stettin* v. *Wilson*, 175 Cal. 423, 426 [166 P. 6]. (61 Cal.2d at p. 733.) As to the amount found subject to stop notice, the *Stettin* case relied upon *G. Ganahl Lumber Co.* v. *Weinsveig*, 168 Cal. 664 [143 P. 1025]. (175 Cal. at p. 426.) The decision in the *Ganahl* case, however, was based on a former section 1200 of the Code of Civil Procedure.[6] This statute was repealed in 1911 (Stats. 1911, ch. 681, p. 1319, § 13), and its repeal was appropriately pointed out in *Dorris* v. *Alturas School District, supra,* 25 Cal.App. at page 33. Moreover, even if they correctly state the current law, the *Stettin* and *Ganahl* cases cannot be considered controlling in the case at bench. Each case involved private works of construction and required no consideration of statutory enactments similar to Government Code sections 14399, 14402 and 14376.

That portion of the judgment appealed from is reversed with instructions to enter judgment in favor of defendant Department of Public Works.

Kerrigan, Acting P. J., and Gabbert, J., concurred.

---

[6] This section provided for the fixing of the portion of the contract price applicable to liens of persons other than the contractor in case of the contractor's failure to perform in full or abandonment before completion. (Stats. 1885, ch. 152, p. 146, § 6.)