[No. C033482. Third Dist. Mar. 20, 2001.]

EAST QUINCY SERVICES DISTRICT, Plaintiff, v.
GENERAL ACCIDENT INSURANCE COMPANY OF AMERICA,
Defendant and Respondent;
DEPARTMENT OF INDUSTRIAL RELATIONS, DIVISION OF LABOR
STANDARDS ENFORCEMENT, Defendant and Appellant.

**COUNSEL**

Ramon Yuen-Garcia for Defendant and Appellant.

Leslie, Powell & Hanneman, Robert E. Leslie and Frederick C. Hannemann for Defendant and Respondent.

## Opinion

**DAVIS, Acting P. J.**—Nominal plaintiff East Quincy Services District (the District) filed a "Complaint in Intervention" [*sic*],[1] which interpled General Accident Insurance Company of America (the Surety) and the Division of Labor Standards Enforcement (the Division) as defendants contesting entitlement to funds the District was holding. The defendants subsequently stipulated to the dismissal of the District from the lawsuit.[2]

The gist of the dispute was whether the District should deduct penalties for prevailing wage and overtime violations[3] on its public works project from the balance of the contract price otherwise owing to defendant Surety. (The Surety funded the completion of the project after its principal defaulted.) The defendants filed cross-motions for summary judgment. The superior court denied the Division's motion and granted defendant Surety's motion, ruling the funds were no longer owed to the contractor and thus were not "payments to the contractor of money due under a contract" out of which the penalties are forfeited by operation of law.[4] The Division challenges this conclusion. We agree and shall reverse with directions.

### FACTS

We review the superior court's ruling on a motion for summary judgment de novo.[5] As there are no material disputes and the few evidentiary objections are waived for failure to obtain rulings on them at the hearing,[6] we will depart from the usual paradigm in which we compare the showings of the parties[7] and focus on the pertinent facts. The Division's notice of appeal is from a judgment that ruled on *both* motions, and thus the totality of the facts before the trial court are part of this appeal.

The District and P & M Pipelines (the contractor) entered into a contract for a sewer project in April 1996. The original contract cost for the project

---

[1]Code of Civil Procedure section 386.

[2]Code of Civil Procedure section 386.5.

[3]Labor Code sections 1771, 1775, 1813, 1815. Further undesignated statutory references are to this code.

[4]Section 1727.

[5]*Rio Linda Unified School Dist. v. Superior Court* (1997) 52 Cal.App.4th 732, 734 [60 Cal.Rptr.2d 710] (*Rio Linda School Dist.*).

[6]Code of Civil Procedure section 437c, subdivision (b), fifth paragraph; *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 670, footnote 1 [25 Cal.Rptr.2d 137, 863 P.2d 207].

[7]E.g., *Rio Linda School Dist.*, *supra*, 52 Cal.App.4th at pages 734-735.

was $2,289,000.[8] This amount was later increased to $2,304,000 as a result of change orders. The contract expressly incorporated an Invitation to Bid and Information for Bidders. The latter noted the application of statutory prevailing wage and overtime requirements for public works projects and the penalties for violations.

Defendant Surety issued payment and performance bonds on the contract for the original amount of the project. The contract expressly incorporated these bonds. In the performance bond, defendant Surety expressly agreed to "cause the obligations and duties of the PRINCIPAL, as set forth in the CONTRACT referred to herein, to be carried out in full."

According to its accounting, the District had paid the contractor $1,346,000 for $1,854,000 in completed work as of October 31, 1996. The contractor, experiencing financial difficulties, defaulted in November 1996. It assigned its right to contract proceeds to defendant Surety. In accordance with its obligations under the bonds, defendant Surety reimbursed all unpaid creditors and engaged another contractor in December 1996 to complete the contract. Defendant Surety's expenses were $1,059,000 and its payments from the District were $492,000. The District filed a notice of completion for the project in September 1997.

During an unspecified period of time, the Division had conducted an investigation, and determined the contractor had failed to pay the prevailing wage. Although not articulated explicitly, it appears the Division also found violations of the maximum workday and workweek requirements for public projects.[9] In November 1997, the Division notified the District to withhold forfeited "payments which are or hereafter may become due to the contractor" in the amount of $97,000 in unpaid wages plus $80,000 in penalties for prevailing wage and overtime violations.[10] Neither the contractor nor defendant Surety filed suit for the recovery of the penalties or forfeitures within the 90-day limitations period.[11] In January 1998, the Division made a demand of the District to remit the forfeited payments and penalties. In June 1998, defendant Surety remitted the unpaid wages to the Division (less an amount paid directly to two workers). The Division subsequently reduced its demand of the District to the amount of the penalties.

The District then filed the instant action. As we read defendant Surety's statement of undisputed facts, the District deposited the disputed amount with the superior court, retaining an additional $9,000 of the contract price.

---

[8]All figures are rounded.

[9]Section 1811 (eight hours per day, 40 hours per week).

[10]Sections 1727, 1775 ($50 per day per underpaid worker), 1813 ($25 per overtime violation per worker).

[11]Section 1733.

## DISCUSSION

 Under the statutes, a contractor forfeits wage and overtime penalties out of money due under a contract for public work.[12] We confront two questions—determining when defendant Surety extinguished the contractor's rights to unpaid construction funds, and when the penalties accrued.

### A

The trial court reasoned there was no money due the contractor under the contract out of which to withhold the penalties after the point of default and defendant Surety's assumption of the contract. In an application of subrogation to this case, the court apparently found defendant Surety could not be considered to be subrogated to the right of the contractor to compensation under the contract because the *District* was its principal ("[h]ad there been no bond the District would have taken the hit") and the contractor had "lost any rights to which [defendant Surety] could have been subrogated."

In point of fact, the *contractor* was the principal—having paid for the bond—and the District was a *creditor of the principal* to whose rights against the principal defendant Surety succeeded after it paid its principal's debt to the creditor,[13] which would presumably include the right under principles of setoff to charge the costs of completion against the unpaid balance of the contract price.[14]

The trial court also cited *Harsco Corp. v. Department of Public Works*,[15] which held that a supplier's stop notice claim against funds "due or to become due" a contractor[16] (an equitable equivalent of a mechanic's lien on a public works project that imposes a trust on the funds held by the agency rather than the public property itself)[17] did not reach funds an agency

---

[12]Sections 1727, 1775, 1813; *J & K Painting Co. v. Bradshaw* (1996) 45 Cal.App.4th 1394, 1397 [53 Cal.Rptr.2d 496] (*J & K Painting*).

[13]11 Witkin, Summary of California Law (9th ed. 1990) Equity, section 169, pages 848-849.

[14]See *A. Farnell Blair Co. v. Hollywood St. Bk.* (1951) 102 Cal.App.2d 418, 427-428 [227 P.2d 529].

[15]*Harsco Corp. v. Department of Public Works* (1971) 21 Cal.App.3d 272, 277 [98 Cal.Rptr. 337] (*Harsco Corp.*) (which cites the venerable decision of this court in *Dorris v. Alturas School District* (1914) 25 Cal.App. 30, 32-33 [142 P. 795] (*Dorris*)).

[16]Civil Code sections 3084, 3085, 3103, 3186.

[17]*United States Fid. & Guar. Co. v. Oak Grove Union School Dist.* (1962) 205 Cal.App.2d 226, 230-231 [22 Cal.Rptr. 907].

retained pursuant to statute[18] from the contractor where completion costs exceeded the amount retained; *Harsco Corp.* noted such funds (again, by statute) are not payable to a defaulting contractor until the project is completed, and then only to the extent they exceed the cost to the agency of completion.[19] The *Harsco Corp.* court also suggested in dictum that to the extent the agency had withheld amounts as penalties for untimely work "from any payments due or to become due to the contractor,"[20] such funds were unavailable for the stop notice claim because they are liquidated damages to which a contractor does not have any rights as compensation.[21] The trial court was not "entirely convinced" it should analogize the Division's claim to that of the supplier in *Harsco Corp.* Ultimately, it decided penalties were solely punishment for the contractor and thus should not defeat defendant Surety's entitlement to the retained funds.

## B

The doctrine of subrogation understandably consumes much of the briefs in light of this ruling. In essence, defendant Surety argues that once it undertook its principal's obligations under the contract, it succeeded to the rights of the District, including setoff. Since the District could set off its costs of completion against any retained amount, defendant Surety contends it could do so as well. As the costs exceeded the retained amount, there were no funds payable under the contract to the contractor from which to withhold the statutory penalties. The Division raises many arguments against applying subrogation. As we shall explain, in the end the issue of subrogation is extraneous.

In the first place, defendant Surety's reasoning creates a renvoi.[22] In order for defendant Surety to claim an offset to extinguish the contractor's right to compensation under the contract, the funds must in fact be owed to the contractor under the contract and thus available for withholding the penalty. Subrogation thus only begs the vital question of determining the amount of

---

[18]Public Contract Code section 10261 (former Gov. Code, § 14402).

[19]*Harsco Corp., supra,* 21 Cal.App.3d at pages 276-277; Public Contract Code section 10258 (former Gov. Code, § 14399).

[20]Public Contract Code section 10226 (former Gov. Code, § 14376).

[21]*Harsco Corp., supra,* 21 Cal.App.3d at page 276.

[22]Cf. Black's Law Dictionary (7th ed. 1999) page 1300 (phrase describing recursive problems in choice of law analysis).

the funds owing to the contractor at the time of defendant Surety's acquisition of the District's right, i.e., whether the penalties were already forfeit.[23]

A more important principle than subrogation is that once a surety assumes the contract of its principal, it stands in the same position to the contract as the principal, *including all liabilities*; a surety is thus liable for all liquidated damages accruing before it assumed the contract, and is no longer limited to its bond in completing the contract thereafter.[24] Thus, the important question is when the penalties in the present case accrued.

In an effort to postpone the accrual of the violations until after it had completed the contract and thus exhausted the contractor's right to any remaining funds, defendant Surety suggests the penalties did not arise until the Division sent the District the notice to withhold funds to pay them. However, this requires a misreading of *J & K Painting*.[25] That court specifically stated section 1727 should be interpreted as causing a contractor to forfeit its right to payment "immediately upon engaging in the conduct which subjects the thing to loss" (italics omitted), and thus a contractor forfeits underpaid wages and penalties at the moment of violation "regardless whether the violation has been discovered, or its magnitude . . . ascertained."[26] Any steps thereafter merely relate to perfecting a worker's right to receive the balance of the prevailing wage and the state treasury's right to the penalty assessment.[27] Numerous other cases reflect this principle, all holding the forfeitures arise by operation of law without the need of any action on the part of the agency or the Division, and requiring affirmative action on the part of the contractor to change the status quo.[28] Thus, the penalties in the present case all accrued at the time of the violations and reduced the amount of funds owed to the defaulting contractor before defendant Surety obtained any rights to them.

---

[23]*Pacific Employers Ins. Co. v. City of Berkeley* (1984) 158 Cal.App.3d 145, 157 [204 Cal.Rptr. 387] (*Pacific Employers*).

[24]*Pacific Employers, supra*, 158 Cal.App.3d at page 156; *Caron v. Andrew* (1955) 133 Cal.App.2d 402, 410-412 [284 P.2d 544].

[25]*J & K Painting, supra*, 45 Cal.App.4th 1394.

[26]*J & K Painting, supra*, 45 Cal.App.4th at pages 1404-1405.

[27]*J & K Painting, supra*, 45 Cal.App.4th at page 1405.

[28]*Purdy & Fitzpatrick v. State of California* (1969) 71 Cal.2d 566, 586 [79 Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194] (funds forfeited unless contractor files under section 1733 to establish rights to them); *O.G. Sansone Co. v. Department of Transportation* (1976) 55 Cal.App.3d 434, 455 [127 Cal.Rptr. 799] (no due process required because funds forfeited before they ever become property of contractor); *Priest v. Housing Authority* (1969) 275 Cal.App.2d 751, 755 [80 Cal.Rptr. 145] (if contractor fails to contest withholding, agency must remit to State Treasurer); *Shalz v. Union School Dist.* (1943) 58 Cal.App.2d 599, 606 [137 P.2d 762] (contractor has burden of proof in § 1733 action because it does not determine penalty but seeks to establish right to withheld funds).

Defendant Surety also argues that once it assumed the duties of its principal under the contract, its contractual entitlement to all funds arose *ab initio*. In support, it cites a 19th-century United States Supreme Court decision[29] and the general principle that a surety is entitled to the benefit of every security for performance that the creditor might hold.[30] As we repeatedly remind litigants, on questions of state law even United States Supreme Court decisions are not controlling;[31] in any event, this case involves a question of priority between a surety and a lender to construction proceeds and does not address the question of funds forfeited for statutory penalties. As for a surety's entitlement to security in a creditor's possession, this once again begs the question of whether the penalties work a forfeiture before the funds accrue as a security payable to the contractor. As the forfeiture occurred at the time of the violations, the encumbered funds no longer were part of the security the District held for the contractor's performance.

This leaves defendant Surety's reliance on *Harsco Corp.* and *Dorris*. Neither is apposite. Both rely on statutory language that limits a stop notice claim to funds due or to become due the contractor.[32] In *Harsco Corp.*, statutory provisions extinguished the defaulting contractor's rights to unpaid contract funds where there were penalties for delay and where the agency incurred greater costs in completing the contract, and thus there were no funds for the stop notice to reach after its filing.[33] *Dorris* reached the same conclusion based on language in the contract at issue.[34] Here, defendant Surety assumed the defaulting contractor's obligations, which included liability to the Division.[35] Further, even if the lack of a surety's participation in the project in either case is not itself a sufficient distinction (the statute in *Harsco Corp.* not applying where a surety completes a contract, and the *Dorris* contract not providing for the participation of a surety),[36] there are two other fundamental differences between these cases and the one before us. As a question of policy, the cases involve a contest to construction funds between a private stop notice claimant and the public agency, where the basis for the statute (and presumably the contract) was protection of the public coffers; thus, the construction of the statutes properly afforded priority to the agency's claim. By contrast, in the present case it is the public

[29]*Prairie State National Bank v. United States* (1896) 164 U.S. 227 [17 S.Ct. 142, 41 L.Ed. 412].

[30]Civil Code section 2849.

[31]9 Witkin, California Procedure (4th ed. 1997) Appeal, sections 941-943, pages 982-985.

[32]*Harsco Corp.*, *supra*, 21 Cal.App.3d at page 276; *Dorris*, *supra*, 25 Cal.App. at page 32.

[33]*Harsco Corp.*, *supra*, 21 Cal.App.3d at pages 276, 277.

[34]*Dorris*, *supra*, 25 Cal.App. at pages 31, 33.

[35]Section 1775.

[36]Public Contract Code section 10258 (former Gov. Code, § 14399); *Dorris*, *supra*, 25 Cal.App. at page 31.

policy of protecting workers (as expressed in the Labor Code) that underlies the assessment of the penalties, thus we should eschew interpretations which would thwart that policy. Furthermore, a stop notice is but a claim, one which the claimant must take further steps to enforce against a fund. The wage and overtime penalties, by comparison, are immediately forfeited upon the occurrence of the violations without the need of anyone to honor them; it is the contractor (or surety) which must take steps to enforce its rights to recover the forfeited funds, which was not done here. Thus, the fact defendant Surety (or District) spent more than the unpaid contract price to complete the project does not affect the penalties.

## DISPOSITION

The judgment is reversed with directions to enter judgment for defendant Division. Defendant Division shall recover its costs of appeal.

Kolkey, J., concurred. Hull, J., concurred in the result.

Plaintiffs' petition for review by the Supreme Court was denied June 30, 2001.